## O'DWYER v. NORTHERN MARKET COMPANY.*

MARKETS; MUNICIPAL LAW; STREETS AND SIDEWALKS; NEGLIGENCE.

1. Where a municipality by sufferance permits a sidewalk adjoining a market house to be used for market purposes, it is its duty to see that the sidewalk is kept in a reasonably safe condition for pedestrians to pass thereon.

2. It is the duty of a municipality to keep the streets and sidewalks free from obstructions of every kind, and there is no difference in principle

---

*Sidewalks.*—As to obstruction of street or sidewalk for business, market, or building purposes, see editorial notes to *Flynn* v. *Taylor*, 14 L. R. A. 556, and *Raymond* v. *Kiseberg*, 19 L. R. A. 643.

As to liability for injuries to pedestrians, see presentation of the authorities in the following editorial notes: Liability of municipal corporation for ice on streets or sidewalks, note to *Hausmann* v. *Madison*, 21 L. R. A. 263; liability of municipality or abutting owner for permitting water to accumulate and freeze on sidewalk to the injury of travelers, note to *Brown* v. *White*, 58 L. R. A. 321; liability of municipal corporation for injuries to travelers caused by persons using space under sidewalk, note to *Beall* v. *Seattle*, 61 L. R. A. 583.

between a dangerous obstruction resulting from a hole or excavation and an equally dangerous obstruction resulting from matter on the sidewalk which is liable to cause one to slip and be injured.

3. In an action against a municipality and a market-house company to recover damages to the plaintiff, who was injured by slipping on green vegetable matter on the sidewalk adjoining the market house, where it appears that the sidewalk had been covered with refuse vegetable matter for many months prior to the date of the accident, it is a question for the jury whether the municipality had constructive notice of the condition of the sidewalk.

4. A market company which has no authority to occupy the sidewalk adjoining its market house for market purposes, but which, nevertheless, exercises dominion over the sidewalk for such purpose by inviting dealers and hucksters to occupy it, and collects tolls from them according to the space they occupy; and undertakes in a lease of a store fronting on such sidewalk to have the sidewalk cleaned each day,—is liable to a pedestrian who steps and falls on refuse vegetable matter on the sidewalk and is injured; the occupation of the hucksters and dealers being the occupation of the market company. (Following *Washington Market Co.* v. *Clagett,* 19 App. D. C. 12.)

No. 1401. Submitted May 13, 1904. Decided June 7, 1904.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury directed by the court in an action to recover damages for personal injuries.        *Reversed.*

The COURT in the opinion stated the case as follows:

The appellant, Jane O'Dwyer, sued as plaintiff in the supreme court of the District of Columbia to recover damages for personal injuries sustained by her through falling on the sidewalk on Seventh street, between O and P streets northwest, in consequence of slipping on some green vegetable matter claimed to have been on the sidewalk through the negligence of the appellees, the Northern Market Company and the District of Columbia, defendants in the court below. The market company owns and conducts a building for market purposes on the northwest corner of Seventh and O streets northwest in this city, and its building extends northward some distance on Seventh street. It

is a private corporation organized under the laws of this District. Besides its market building proper, it owns all the adjacent property on Seventh street between O and P streets, except two pieces, and a store, which was part of this property, and in front of which the accident occurred which caused the appellant's injury, it rented to a Mrs. Cohen, who kept there a second-hand clothing and jewelry store.

The mornings of Mondays, Wednesdays, and Fridays, and the afternoons of Saturdays, were market days; and on these market days for many years country dealers and hucksters were in the habit of occupying about 3 feet or more of the sidewalk on the west side of Seventh street in front of the market building and adjacent thereto with their baskets, trays, and other receptacles, and displaying there for sale their green produce, fruits, and other articles. The stands, barrels, and trays, when not in use, were kept by the market company on a piece of ground adjoining the company's building and owned by it. On market days the hucksters and country dealers lined the sidewalk on the west side of Seventh street all the way from O to P street, except in front of the two pieces of property which were not owned by the market company, and such was the condition on the day on which the appellant met with her accident. The market master was accustomed to collect toll of some kind from these hucksters and dealers according to the amount of space which they occupied, although it is stated that they had no formal permit from the company to occupy the sidewalks, and that the company had no permit from the District of Columbia to occupy them.

In the lease from the market company to Mrs. Cohen, in front of whose premises the appellant's accident occurred, there was this provision:

"It is understood and agreed that country traders and teams will be allowed to occupy the space in front of said store to the curb for displaying and selling goods, and that the clerk of the market will be allowed to collect for same and see that the space is cleaned up after the persons and teams have left."

It is testified that a bright mulatto man, on the day of the ac-

cident to the appellant, had his stand on the sidewalk immediately in front of Mrs. Cohen's store; that he dealt in potatoes, apples, onions, and such like things; that the sidewalk there was literally covered with refuse vegetable matter; that the whole sidewalk for a long distance was so covered; that it was in a filthy condition during the summer of 1901, during which, on August 26, the accident to the appellant occurred; and that the appellant slipped on a piece of such refuse vegetable matter and was injured.

At the trial the facts substantially as here stated were developed by the testimony on behalf of the plaintiff. The defendants offered no testimony, and each severally moved for direction of a verdict in its favor on the ground that the plaintiff had made out no cause of action against either of them. The motion was allowed, and there was verdict for the defendants, and thereupon judgment, from which the plaintiff has appealed.

*Mr. Charles H. Merillat* and *Mr. Charles F. Carusi* for the appellant.

*Mr. M. J. Colbert* and *Mr. Arthur Peter* for the appellee the Northern Market Company:

1. The owner of property abutting upon sidewalks or streets has no more control over the same, and no greater rights in regard thereto, than any other citizen of the United States. *Mattingly* v. *District of Columbia,* 97 U. S. 687; *Gibbons* v. *District of Columbia,* 116 U. S. 404; *Railroad Co.* v. *District of Columbia,* 132 U. S. 1; *District of Columbia* v. *Woodbury,* 136 U. S. 450. The right of control of the District of Columbia over the streets and sidewalks carries with it the obligation to keep those streets and sidewalks free from obstruction. *Barnes* v. *District of Columbia,* 91 U. S. 540.

2. A passenger who, leaving a train, walks along a station platform on which other passengers are walking ahead of him, and falls by stepping on a banana skin and is injured, cannot recover from the railroad company, if it does not appear how long

the banana skin had been there, or how it got there.   *Goddard* v. *R. Co.* 176 Mass. 52.   See also 21 Am. & Eng. Enc. Law, 2d ed. p. 720 ; *District of Columbia* v. *Boswell,* 6 App. D. C. 402.

3. The occupier, and not the landlord, is bound, as between himself and the public, so far to keep the buildings and other structures abutting upon highways in repair that said highways may be safe for the use of travelers thereon; and such occupier is prima facie liable to third persons for damages arising from any defect.   *Lowell* v. *Spaulding,* 4 Cush. 277 ; *Oakham* v. *Holbrook,* 11 Cush. 299 ; *Rich* v. *Basterfield,* 4 C. B. 783 ; *Mullen* v. *Morrill,* 126 Mass. 545 ; *Kirby* v. *Market Asso.* 14 Gray, 249 ; *Stewart* v. *Putnam,* 127 Mass. 406.

4. The appellant did not have the right to presume that the sidewalk was in a safe condition, because, according to her story, she had knowledge that it was not kept in proper condition, and she was therefore guilty of contributory negligence.   *Dant* v. *District of Columbia,* 3 MacArth. 270 ; Cooley, Torts, 674 ; *R. Co.* v. *Gullett,* 15 Ind. 487 ; *Indianapolis* v. *Deane,* 101 Mass. 455.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the appellee the District of Columbia :

1. It is not uncommon for a market to be held in a public street, and it has long been recognized that such use of a street may be lawful.   *Atty. Gen.* v. *Cambridge,* L. R. 6 H. L. 303 ; *Nightingale, Petitioner,* 11 Pick. 168 ; *Henkel* v. *Detroit,* 49 Mich. 249 ; *Hoffman* v. *Schultz,* 31 How. Pr. 385.   Where a place had been used as a market to which persons resorted to expose articles for sale, it was held to be a sufficient answer to an indictment for a nuisance that the same had been enjoyed as a market place for more than twenty years.   *Rex* v. *Smith,* 4 Esp. 109.   In *Black* v. *Cleveland* (Ohio) 3 West. L. Month., it was held that a municipal corporation is not liable to an individual for damages sustained by him in driving along a street appropriated to market uses occasioned by the street being obstructed by market teams, wagons, and marketmen.

2. The sole question respecting the District of Columbia is whether it is liable for failure to exercise its police power. The public demanded certain uses of this street for market purposes, and, as shown by the record, the administrative officers of the District government have refrained from interfering by the exercise of police power. The enforcement of the laws, whether general or municipal, seems generally to be regarded as a public, governmental function, the municipality not being liable for the acts of its officers in furtherance of such object, though they may act negligently, or under void judgments or ordinances. 20 Am. & Eng. Enc. Law, 2d ed. p. 1195. The general rule is that a municipal corporation is not liable in damages for a failure to enact ordinances with reference to subjects within its jurisdiction, or failure to enforce ordinances after their enactment. 20 Am. & Eng. Enc. Law, 2d ed. p. 1198. See also *District of Columbia* v. *Monroe,* McArth. & M. 348.

Mr. Justice MORRIS delivered the opinion of the Court:

1. Considering first the suit as against the District of Columbia, we are of opinion that there was sufficient testimony in the case upon the question of the negligence of the District to justify the submission of that question to a jury. The argument on behalf of the District seems to be based upon two theories: (1) That it has the right to establish markets in the streets without rendering itself liable thereby to a person who is injured by something which is the natural result of such a market; (2) that the District is not liable for failure to make or to enforce its own regulations. But, very plainly, both of these contentions are outside of this case. It might be answered to the first that the District has not established any market in the streets where the plaintiff's accident occurred, unless tolerance can be regarded as the equivalent of establishment. The adjacent market is a purely private institution, and the occupation of the street in connection with it by country dealers and hucksters is not the result of any municipal ordinance or legislative enactment, but purely and simply a matter of sufferance on the part of the

municipality; and as to the second contention, there is no question whatever here of failure to make municipal ordinances or failure to enforce them, but of failure to perform a plain duty imposed upon it by the charter of its creation.

Now, it is of no consequence whatever in the present connection whether the District of Columbia established a market here in this street or not. If it did establish one, its duty became all the more imperative to see that the street was kept in a safe and proper condition. If it did not establish a market, but suffered one to be carried on in the street in violation of law and the rights of the public, the occupation of the street by the market dealers was a nuisance which it was its duty to abate, and for which, if anyone was injured thereby, it was liable to be held for damages. The duty in either case is upon the municipality to see that the sidewalks are in reasonably safe condition for pedestrians to pass thereon. The neighborhood of a market, whether it has been established by express municipal ordinance or it has been permitted to continue by tacit acquiescence on the part of the municipality, is notice that more than usual care should be taken to keep the streets free from the encumbrance of vegetable or other matter which is a source of danger to those who have occasion to use the street. There is no difference in principle between a dangerous obstruction in the street resulting from a hole or excavation and an equally dangerous obstruction resulting from matter thereon which is liable to cause one to slip and to be injured. The duty of the municipality is to keep the streets free from all obstructions of every kind; and we know of no law or principle of justice that would exempt the municipality from the performance of that duty on the ground that there is a market, whether public or private, in the neighborhood.

It is of no consequence here whether the occupation of a portion of the sidewalks was lawful or unlawful. No one is claiming to have been injured by the unlawful occupation, if such there was. The claim is that the part of the sidewalk left for the use of pedestrians was habitually kept in so filthy and dangerous a condition as to be a constant menace to the public and eventually to have caused the plaintiff's accident. It was the

duty of the municipality, even if it permitted the occupation of a part, at least to keep the remainder in safe condition. This it would seem not to have done in the present instance.

Of course, for obstructions in the street not caused by itself or its own agents or employees the municipality cannot be held liable, unless it has had notice of it, or unless the obstruction has lasted so long and under such circumstances that, with due diligence, it should have known of its existence. The obstruction here was not caused by the municipality or its agents, but there is ample testimony in the case to show that it was put upon notice. There is testimony tending to show that for a long time, for the whole year in fact, the sidewalk in question was constantly in the same obstructed condition; and this was sufficient to go to the jury.

This is not the case of a banana peel or other similar refuse matter of a dangerous character thrown upon the sidewalk by some reckless or heedless person, and causing injury to someone who slips upon it. In that case the rule is plain that the municipality is not liable until it has had notice, or opportunity of notice, of the obstruction. But here the testimony is that the dangerous condition was constant, had continued for many months, and existed in the midst of a well-populated section of the city, where there was incessant travel to and fro. If the facts are as here testified,—and it is for a jury to determine the value of the testimony,—we fail to see under what theory of the law the municipality is to be exempted from liability.

2. Passing now to the question of the liability of the market company, we think that also should have been submitted to a jury. By the testimony in the case it is shown that, while the market company had no authority whatever to establish a market on the street or sidewalk, yet, as a matter of fact, it did do so, with the concurrence, or, at all events, with the long-continued sufferance, of the municipal authorities. As we have already stated, with reference to the question of the liability of the District of Columbia, a great part of the argument on behalf of the District in this case is devoted to an attempt to show that the municipality had the right to permit and to sanction this use of the street for

such purpose; and that it did sanction the occuption, either by sufferance or by express authority, is conceded. It matters not, therefore, that the market company may have been without lawful authority to establish a market in the street, as it did do in this case; if the establishment was in fact by the company, it is liable for all the consequences that might reasonably have been expected to result from its action. No one has a right unduly to obstruct the highway, but if he does in fact so obstruct it, there can be no reasonable doubt that he is liable for injury resulting from the obstruction.

It is not to be doubted under the testimony adduced on behalf of the plaintiff that the market company, at the time of the plaintiff's accident and for a long time previous thereto, was engaged in conducting a market in the street in front of its building, as well as within the precincts of that building. It assumed dominion over the street for that purpose. It invited the dealers to come there and to occupy the street, and it assumed to charge, and it did in fact exact from them, a compensation for such occupation. How far its assumption of authority extended may be inferred from the fact that in one, at least, of its leases of property adjacent to the market house, which it rented to other persons, it reserved the right, if right it can be called, to have the dealers and hucksters occupy the sidewalk in front of the property to a certain extent, while at the same time it undertook to have the sidewalk cleaned each day after such occupation.

The occupation of the street by the market company for the purpose of a market is, therefore, beyond question; for its occupation by the hucksters is, under the circumstances, an occupation by the market company. The business of the hucksters was conducted under the control of the company, and the company made itself responsible for the proper conduct of that business. If these dealers littered the sidewalk with their refuse matter to the danger of pedestrians, or even if those who had business with such dealers heedlessly threw such refuse matter on the sidewalk, and the littering of the sidewalk was the ordinary and usual result of the marketing business that was carried on there, it undoubtedly became the duty of the market company to provide for

the prompt removal of the offal.    This duty it recognized itself, when it undertook in its leases to cause such removal each day after the departure of the hucksters; but it was not competent for it to restrict its diligence, so far as the public were concerned, to one such effort.    It was its duty to keep the sidewalk clean and safely passable at all times so far as obstruction might be occasioned by the purposes to which it sought to devote the street.

No adjudicated case directly in point has been cited to us, but it is believed that the principle of the case of *Washington Market Co.* v. *Clagett,* 19 App. D. C. 12, is applicable if authority is needed in support of the propositions that have been enunciated.

We think there was error in the withdrawal of this case from the jury.    For that error the judgment must be reversed, with costs; and the cause will be remanded with directions to set aside the verdict and judgment and to award a new trial.    And it is so ordered.                                    *Reversed.*