## LYMAN v. KNICKERBOCKER THEATRE CO. OF WASHINGTON, D. C.

(Court of Appeals of District of Columbia. Submitted March 3, 1925. Decided May 4, 1925.)

No. 4166.

1. Appearance ⬦⟾24(5)—Venue ⬦⟾84—General demurrer to declaration is waiver of objection to venue or service of summons.

General demurrer to declaration is waiver of objection to venue or service of summons.

2. Corporations ⬦⟾630(1) — Action properly brought against company in corporate name, even after dissolution.

Under Corporation Laws Del. art. 1, §§ 40–43 (Rev. Code Del. 1915, §§ 1954–1957), and Code D. C. § 785, action is properly brought against company in its corporate name, even after dissolution.

3. Trial ⬦⟾63(1)—Plaintiff, relying on doctrine of res ipsa loquitur, cannot in rebuttal for first time introduce evidence of specific negligence.

One suing for death of patron of theater, resulting from collapse of building, who relied on doctrine of res ipsa loquitur in presenting case in chief, held not entitled to prove in rebuttal inherent faults in architect's plans and specifications for building, and defects in both material and workmanship.

4. Theaters and shows ⬦⟾6—Reasonable care required of owner.

Theater company is required to exercise only that degree of care that a reasonably prudent man engaged in such a business should exercise.

Appeal from Supreme Court of District of Columbia.

Action by Josephine T. Lyman, administratrix of the estate of David Lyman, against the Knickerbocker Theatre Company of Washington, D. C. Decree for defendant, and plaintiff appeals. Affirmed.

J. L. Smith, J. M. Chamberlin, and G. L. Munter, all of Washington, D. C., for appellant.

W. J. Lambert and R. H. Yeatman, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The appellant, as administratrix of the estate of David Lyman, deceased, filed a declaration against the Knickerbocker Theatre Company, claiming damages upon the ground that on January 28, 1922, the intestate regularly paid for admission to the company's theater, and occupied a seat as a spectator at a public exhibition given by the company therein, and that while he remained seated, witnessing the performance, the roof, ceiling, and balcony of the theater fell as a result of the negligence of the company in the construction and maintenance thereof, striking the intestate and causing his death. The case went to trial to the jury upon a plea of not guilty, with verdict and judgment for the defendant. This appeal followed.

[1, 2] The first question to be considered is one raised by the appellee respecting the venue of the action and the service of summons upon the defendant. It is claimed that the Knickerbocker Theatre Company was a Delaware corporation, and that after the time of the accident, but before the commencement of this case, it was lawfully dissolved and receivers were appointed for it in the state of Delaware, pursuant to the provisions of section 1957 of the Revised Code of Laws of that state. In the present case the summons was served by copy left with the president of the company, without service upon the receivers, and it is claimed that the service was invalid. We think, however, that this objection was waived when the defendant filed a motion and demurrer to the declaration.

The action was correctly brought against the company in its corporate name, even assuming that it had been lawfully dissolved. Corporation Laws of Delaware, article 1, sections 40 to 43 (Rev. Code, §§ 1954–1957); D. C. Code, § 785. A general demurrer to the declaration, filed by counsel who are officially presumed to possess proper authority to represent the defendant in the action, has the effect of waiving all objections to the venue and service of summons.

[3] At the trial the plaintiff introduced evidence that the intestate was killed by the falling of the roof, while a patron of the theater, also testimony concerning his next of kin, and thereupon rested. It was held that this established a prima facie case for a recovery under the rule of res ipsa loquitur.

The defendant thereupon introduced evidence tending to show that the building in question was erected in the year 1917 and was used as a theater until it collapsed in 1922; that the plans and specifications were prepared by a professional architect employed by defendant, which were duly filed with and approved by the proper officials of the District of Columbia, and were explained and placed in evidence; that contracts for

materials and labor were let to an experienced and competent general contractor; that all construction work was done under careful and competent inspection; that while under construction, and when completed, it was inspected and approved by the official building inspectors of the District of Columbia; that no faults or defects in the building were thereby discovered; and that defendant in general exercised reasonable care and prudence in and about the construction and maintenance of the building for its use as a place of public entertainment. The evidence up to this point did not attempt to locate or explain the cause of the fall of the roof in 1922.

The plaintiff in rebuttal then called various witnesses, and tendered certain testimony tending to prove the existence of alleged inherent faults in the architect's plans and specifications for the building, as well as defects both of materials and workmanship in its construction. This testimony, however, was excluded by the court, upon objection, upon the ground that it was evidence in chief, and was not admissible in rebuttal. We think that this ruling was correct. The application of the rule of res ipsa loquitur did not excuse the plaintiff from the duty of introducing in chief all of her evidence in support of the charge of negligence. She was entitled to rest upon that principle when submitting her case in chief, but she was not thereby permitted to open up the case again when the time came for rebuttal. The issue was accordingly submitted to the jury upon the evidence aforesaid.

[4] Concerning the degree of care exacted of the defendant in the construction of the theater building the court instructed the jury in part as follows (several cases being consolidated):

"In these cases, gentlemen, the question that is to be determined, really, by you, is whether or not this defendant company exercised due care when, on the night of January 28, 1922, it invited these three people to come and pay the admission and take their seats in the theater and witness that performance. Did the Knickerbocker Theatre Company exercise towards them the due care required of it—the due care, the care that a reasonably prudent man engaged in such a business should exercise with respect to the audience that he invites, under such circumstances, into this theater to witness a performance that he offers to them for their amusement.

"In connection with that doctrine of res ipsa loquitur, I have stated the rule, but I have granted a prayer of the defendants on that subject, which I feel I must read to you, because it, too, states the law which must be your guide in this particular.

"The jury are instructed as matter of law that the maxim 'res ipsa loquitur,' referred to in these cases, means that the facts of the occurrence furnish circumstantial evidence of negligence; where direct evidence of it may be lacking, but such evidence is not necessarily to be accepted as sufficient, and, when all the evidence is in, the question for the jury to determine is whether or not the preponderance of evidence as to negligence is with the plaintiffs.

"In cases of this character, where the doctrine of res ipsa loquitur is invoked, the burden of proving negligence, nevertheless, remains upon the plaintiff.

"It is upon the plaintiffs here to satisfy you, by a preponderance of all of the evidence in the case, that the defendant, the Knickerbocker Theatre Company, did not exercise the kind of care that was due from it to these plaintiffs, and because it did not therefore it is negligent, and the injury suffered must be compensated for by it."

The plaintiff objected to these instructions, claiming that they did not exact from the defendant as high a degree of care as was due from it toward the intestate under the circumstances. The plaintiff accordingly prayed the court to instruct the jury that the defendant, in the construction, operation, and maintenance of the theater, "was charged with the highest degree of care." This and other like instructions presented by the plaintiff were refused by the court.

We are of the opinion that the court's instruction, defining the degree of care which was required of defendant, was correct, namely: "The care that a reasonably prudent man engaged in such a business should exercise with respect to the audience that he invites, under the circumstances, into his theater to witness a performance that he offers to them for their amusement." The attention of the jury was thus called to the fact that the safety of large numbers of people would regularly depend upon the manner in which the building was constructed and maintained, and that the defendant was bound to use such care for that purpose as a reasonably prudent man should exercise for the safety of such assemblages of people. This instruction sufficiently defined the high degree of care which the defendant was bound to exercise under the circumstances, and its force and effect differed but little, if at all, from the proposed instruction that the de-

fendant "was charged with the highest degree of care."

"The duty assumed by the owners of places to which the public thus resort in large numbers is manifestly analogous to that which the law imposes upon carriers of passengers. Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be reasonable care will be a degree of care proportioned to the danger incurred and the number of persons who will be subjected to that danger." 1 Thompson, Negligence, § 996.

"What is ordinary care must be determined by the danger which its exercise requires to be overcome, for what would be ordinary care under some conditions might under different conditions amount to the grossest kind of negligence. In other words, the standard of care fixed by law is due care under the circumstances, and this requires a vigilance commensurate with the danger to be apprehended." 8 Thompson, Negligence, § 25.

"A person, erecting and using a hall for such exhibitions, must use reasonable care in the construction, maintenance, and management of it, having regard to the character of the exhibitions given and the customary conduct of spectators who witness them, and the acts of the plaintiffs must be judged of according to the conduct which ordinarily prudent people show under the circumstances." Schofield v. Wood, 170 Mass. 418, 49 N. E. 639.

"Though there are decisions to the effect that the proprietor of a scenic railway in an amusement park should be held to the same degree of care as is required of a common carrier—i. e., the highest degree of care and. caution consistent with the practical operation of the railway—it is the well-settled general rule that the proprietor of a place of amusement is not an insurer of the safety of his patrons, nor is his undertaking so similar to that of a common carrier of passengers as to call for the application of the same rule of responsibility. He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place." 26 R. C. L. 714.

The lower court correctly instructed the jury that the plaintiff was not entitled to a verdict against the defendant, unless they found the charge of negligence sustained by a preponderance of the evidence. Under this instruction the jury found for the defendant, and upon the evidence as submitted in the case we cannot say that the lower court erred when it refused to set the verdict aside.

The record presents numerous assignments of error, which we need not discuss in detail, since the appeal is disposed of upon the foregoing considerations.

The judgment below is affirmed, without costs.