**WATFORD by JOHNSTON et al.**
**v.**
**EVENING STAR NEWSPAPER**
**CO. et al.**
**No. 11638.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 12, 1953.

Decided Jan. 8, 1954.

---

Mr. Louis Ginberg, Washington, D. C., Mr. Ellis Klein, Washington, D. C., on the brief, for appellants.

Mr. Paul R. Connolly, Washington, D. C., Mr. John P. Arness, Washington, D. C., on the brief, for appellees.

Before CLARK, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

Appellees, private commercial companies, joined in a promotional advertising venture involving sponsorship of the 1947 Washington Soap Box Derby. Boys, eleven to fifteen years old, who had built miniature motorless racers, participated in this race. The Derby and its sponsors were extensively advertised, spectators were invited to watch the competition free of charge and prizes were awarded by the sponsors to the winners. The Derby in question was conducted on public property pursuant to arrangements with municipal authorities which included police supervision for the safety of the invited spectators.

It was actively supervised by Howard Bailey, assistant to the publisher of the Evening Star newspaper. He arranged for the race itself, to which local Chevrolet dealers and the Star invited the public, and also coordinated the activities of the American Legion, the police and other municipal authorities who had agreed to assist in various phases of the event. With the police, he participated in the selection of Pennsylvania Avenue as the site of the race and in the decision to place rope barricades on public property three feet behind both curbs for protection of spectators. Who was actually in charge of spectator safety at the race itself is in dispute. On the one hand, there is testimony that the police considered the handling of the crowd to be its responsibility. On the other hand, the evidence also shows that Bailey and an assistant used a public address system installed by them to urge spectators to get behind the rope barricades and that they threatened to hold up the races until their orders were obeyed. It appears that, despite these warnings, the police permitted spectators to stand in front of the rope barricades and apparently races were run when

spectators were in front of the rope barricades.

Appellants are Herman Watford, who was a six year old spectator, and his mother who brought this personal injury suit against appellees on his behalf and on her own. They alleged that the safety measures employed by appellees were inadequate to discharge the duty which appellees owed to the boy as an invited spectator and that, as a result, he was struck and seriously injured by a soap box racer when its twelve year old driver lost control. The jury denied him and his mother any recovery.

Appellants' principal contention is that despite appellees' admission of sponsorship and conduct of the Derby, the jury was nevertheless instructed that before appellees could be charged with a duty to exercise reasonable care, as invitors, it must first determine as a matter of fact that appellees possessed the control necessary to discharge that duty. We think this was error. The court should have instructed the jury that appellees, as a matter of law, occupied the status of invitors chargeable with the duty to exercise reasonable care.

■■ It is perfectly clear that appellees would have been charged with such duty if the exhibition had been held on private property.[1] Whenever one invites others to come upon property for the purpose of viewing or participating in an event which he has set in motion and is conducting for some private purpose or benefit,[2] those invited have a right to *assume* not only that he has authority to use the property for that purpose but that he also possesses concomitant control or ability to employ adequate measures for the protection of invitees from foreseeable dangers arising out of such event.[3] Thus, even an invitor who had neither the authority to use the private property upon which he had invited the public nor the control or ability to employ safety measures was nevertheless held liable for injuries resulting from the failure to employ such measures.[4]

■ We think this reasoning in respect of the issue of the invitor's control is applicable without regard to the public or private nature of the property onto which persons are invited.[5] The public character of the property does not alter

1. Uline Ice, Inc., v. Sullivan, 1950, 88 U.S. App.D.C. 104, 187 F.2d 82; Lyman v. Knickerbocker Theatre Co., 1925, 55 App. D.C. 323, 5 F.2d 538; Frear v. Manchester Traction, Light & Power Co., 1927, 83 N.H. 64, 139 A. 86, 61 A.L.R. 1280.

2. "Private purpose or benefit" includes much more than direct pecuniary return to the invitor because of the presence of the invitee. As stated in Hotels El Rancho v. Pray, 1947, 64 Nev. 591, 609–610, 187 P.2d 568, 577, it includes "Any substantial or appreciable interest or advantage, whether pecuniary, recreational, educational, charitable, spiritual, or otherwise, which an owner or occupant considers sufficient incentive to cause him to plan and purpose public gatherings, assemblages, exercises, exhibitions, or other events, and to *invite* others to participate therein, upon premises owned or occupied by him, in order to carry out such plan or purpose, * * *." See also Turgeon v. Connecticut Co., 1911, 84 Conn. 538, 80 A. 714. For the proposition that "When premises are thrown open to the public, the

occupier assumes responsibility for their safe condition toward any member of the public who may enter for the purpose for which they are open, regardless of whether he brings with him the hope of profit or 'benefit,'" see Prosser, Business Visitors and Invitees, 26 Minn.L. Rev. 573, 611–12 (1942).

3. Frear v. Manchester Traction, Light & Power Co., supra note 1 and cases cited therein.

4. Hotels El Rancho v. Pray, 1947, 64 Nev. 591, 608, 187 P.2d 568, 576–577: "A participant in such race, or races, in response to such an invitation, would not be burdened with the duty of ascertaining whether or not the invitor was an owner, lessee, licensee, or a mere trespasser."

5. See Skelly v. Pleasure Beach Park Corp., 1932, 115 Conn. 92, 160 A. 309; McKinney v. Adams, 1914, 68 Fla. 208, 66 So. 988, L.R.A.1915D, 442; Marth v. Kingfisher Commercial Club, 1914, 44 Okl. 514, 144 P. 1047.

the private character of the invitor's purpose or benefit. Nor does it detract in any way from the representation implicit in the issuance of the invitation— one which holds out to the public that the invitor has both the authority to use the property and the concomitant ability to discharge an invitor's duty of providing a reasonably safe place for invitees to watch the race. "Liability to invitees is not imposed merely because of ownership, but because of the invitation. If the invitation includes a representation of ownership or control, justice and reason require that the invitor may be taken at his word in that aspect of the case as well as in others. This he is bound to know when he extends the invitation. Knowing the effect his conduct is to have upon the public, he is bound to act in reference to the situation he has thus created. If he wished to avoid such responsibility, he should not extend such an invitation. The holding out to the public created a relation. The relation gave rise to a duty to use some care. The measure of that duty is the obligation imposed by law upon one whose position the party has assumed." [6]

We held in O'Dwyer v. Northern Market Co., a case involving an invitor who had neither authority to use the public property nor control or ability to employ safety measures, that the invitor was nevertheless liable for failure to take proper precautions. "It matters not * * * that the market company may have been without lawful authority to establish a market in the street, as it did do in this case; if the establishment was in fact by the company, it is liable

for all the consequences that might reasonably have been expected to result from its action." [7] Similarly, in Murphy v. Jarvis Chevrolet Co., a Soap Box Derby case like the present one, the court imposed the status of invitor upon the sponsor, saying: "At [the] time [of the race, the street] was not being used by the public as a public highway but was closed to ordinary and usual traffic and to those who were there at the invitation of appellees [sponsors], appellees assumed an obligation that the premises were in a reasonably safe condition." [8]

We hold that appellees were invitors as a matter of law. Since an instruction was given below that their status was a question of fact for the jury, it is impossible to determine whether the verdict denying recovery to appellants was based upon the erroneous instruction or upon some independent issue in the case.[9] Nor can we accept appellees' contention that the judgment below should be affirmed even if the trial court erred, as we now hold, in failing to instruct the jury that the appellees were invitors as a matter of law. This contention rests upon the argument that the precautions taken to protect spectators constituted reasonable care as a matter of law; hence, the District Court should have directed a verdict for appellees. In our view, the District Court properly submitted the issue of negligence to the jury. For example, whether the rope barricades offered reasonable protection to the invited spectators, whether it was reasonable to permit spectators to disregard the ropes and advance to the curb, and whether Bailey

6. Frear v. Manchester Traction, Light & Power Co., 1927, 83 N.H. 64, 69, 139 A. 86, 89–90.

7. O'Dwyer v. Northern Market Co., 1904, 24 App.D.C. 81, 89.

8. Murphy v. Jarvis Chevrolet Co., 1941, 310 Ill.App. 534, 34 N.E.2d 872. This statement appears in the complete opinion of the case which was not reported. Accord: Macon Telegraph Pub. Co. v. Graden, 1949, 79 Ga.App. 230, 53 S.E.

2d 371. Contra: Bango v. Carteret Lions Club, 12 N.J.Super. 52, 79 A.2d 57, certification denied 1951, 7 N.J. 347, 81 A.2d 522.

9. The jury's verdict could have been based on any one of the following findings: that the boy was not injured at the Derby, that he assumed the risk of injury, that there was no failure to take reasonable precautions, that, if there were negligence, recovery was barred by the boy's contributory negligence.

acted reasonably in allowing the races to proceed when spectators were in front of the ropes are all questions properly within the province of the jury. The judgment below must therefore be reversed and the case remanded for a new trial.

Our views as to another issue raised by this appeal may be pertinent on re-trial and, therefore, we set them forth at this time. The trial court instructed the jury, in effect, that if appellees had the duty to exercise ordinary care,[10] that duty was not discharged by the arrangement which appellees made for police supervision.[11] Contrary to appellees' contention, we think this charge was correct. As an invitee, appellant could rightfully assume that appellees would take reasonable precautions for his safety. Appellees' duty was not discharged merely by calling in the police or other parties. For that in itself was no assurance that reasonable precautions would be taken. Such duty could be discharged only if appellees, the police or others acting on appellees' behalf took the required precautions. Thus, it becomes a matter of fact for the jury to determine whether the precautions taken by all the participating parties were sufficient to discharge appellees' duty of providing a reasonably safe place from which to watch the race.

Resolution of this question may well be analogized to our holding that appellees' duty to exercise reasonable care in their conduct of the exhibition on public property is no different from that required had it been held on private property. Thus, the status of the police may be assimilated to that of either a servant, or an independent contractor. If the police are considered to be servants, whose services are gratuitous or compelled by law, clearly appellees' duty to exercise reasonable care is not discharged by their mere employment.[12] And if, on the other hand, the police are considered to be independent contractors, we think applicable the reasoning of those cases which hold an exhibitor liable for injuries resulting from an independent contractor's failure to exercise reasonable care in the construction of bleachers,[13] in the maintenance of a safe entranceway,[14] and in the operation of devices at an amusement park.[15] The foreseeable dangers in those circumstances are reasonably similar to those arising out of the conduct of the exhibition in the present case. Consequently, we think that here, as in those

---

10. That "ordinary care" and "reasonable care" are synonomous, see Hotels El Rancho v. Pray, 1947, 64 Nev. 591, 619, 187 P.2d 568, 582; and Archuleta v. Jacobs, 1939, 43 N.M. 425, 433, 94 P.2d 706, 711.

11. Later, at the request of appellees' counsel, the jury was charged as follows: "You will recall that I told you that the negligence of third parties, that is to say, such as the police, is not chargeable to the [appellees], unless, of course, there was some negligence on the part of the [appellees] which contributed to proximately cause the injury."

The meaning of this subsequently added charge is not entirely clear to us. To the extent that it may be read as conflicting with the earlier charge, we think it was error.

12. See Fournier v. Churchill Downs-Latonia, Inc., 1942, 292 Ky. 215, 166 S.

W.2d 38; and Restatement, Agency §§ 224, 228 (1933).

13. Lawson v. Clawson, 1939, 177 Md. 333, 9 A.2d 755.

14. Brown v. Reorganization Inv. Co., 1942, 350 Mo. 407, 166 S.W.2d 476.

15. Engstrom v. Huntley, 1942, 345 Pa. 10, 26 A.2d 461 (failure to keep Tilt-A-Whirl in safe condition); Frear v. Manchester Traction, Light & Power Co., 1927, 83 N.H. 64, 139 A. 86 (failure to keep ferris wheel in safe condition); Wodnik v. Luna Park Amusement Co., 1912, 69 Wash. 638, 125 P. 941, 42 L.R.A.,N.S., 1070 (failure to keep striking weight machine in safe condition); Turgeon v. Connecticut Co., 1911, 84 Conn. 538, 80 A. 714 (failure to keep miniature railway in safe condition); Basye v. Craft's Golden State Shows, 1941, 43 Cal.App.2d 782, 111 P.2d 746 (negligent operation of shooting gallery). See also Restatement, Torts § 344 (1934).

cases, the duty to take reasonable precautions for protecting invitees was nondelegable.[16]

■ Appellants challenge the correctness of the trial court's charges on the issues of assumption of risk and contributory negligence, as well as its exclusion of two accounts of the accident appearing in the Evening Star and of testimony that an Evening Star official promised to pay Watford's hospital expenses. We do not think, however, that these charges and rulings were erroneous.

Reversed and remanded for a new trial.

16. "Having assumed the position of owner or occupier of premises, the [invitor] had the duty to use reasonable care to see that the place was safe for those who entered in pursuance of its invitation. This duty is nondelegable." Frear v. Manchester Traction, Light & Power Co., 1927, 83 N.H. 64, 69–70, 139 A. 86, 90. See also Prosser on Torts 486–87 (1941).