**W. M. AND A. TRANSIT COMPANY,**
Appellant,

v.

**Clara RADECKA, Appellee.**

**No. 16560.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 10, 1962.

Decided Feb. 8, 1962.

---

9. Ibid.

Mr. Richard W. Galiher, Washington, D. C., with whom Mr. William E. Stewart, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Charles H. Mayer, Washington, D. C., with whom Mr. Lewis H. Shapiro, Washington, D. C., was on the brief, for appellee.

Before DANAHER, BASTIAN and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

This case presented a classic *res ipsa loquitur* situation. The appellee proved that while a passenger on the appellant's bus, she was violently thrown from her seat, rendered unconscious, and otherwise seriously injured when the driver suddenly applied the brakes and stopped the bus. After the appellant had offered evidence to explain the occurrence, the trial judge denied the appellant's motion for a directed verdict, and later, its motion for judgment n. o. v. We find no error with respect to such denials, for if other rulings complained of be correct, the evidence taken as a whole amply supports the orders.[1]

Appellant argues, in effect, that the sum total of the available evidence erroneously included as rebuttal, testimony adduced through Chief of Police Volkman of District Heights, Maryland. Likewise, it is contended, one Ostrom, though qualified as an expert, under the circumstances of this case should not have been permitted to submit expert testimony. Consideration of the appellant's claims in the foregoing respects requires reference to the circumstances under which the challenged testimony was received

1. Williams v. Capital Transit Co., 94 U.S. App.D.C. 221, 225, 215 F.2d 487, 491 (1954); Loketch v. Capital Transit Company, 101 U.S.App.D.C. 287, 288, 289, 248 F.2d 609, 610, 611 (1957).

At the close of the appellee's case, appellant went forward with its explanation of the occurrence. The bus driver was called. He testified that on a clear, dry August day, the bus was being operated in District Heights, Maryland, at a speed of 15 miles per hour. The neighborhood is thickly populated, with a great many children living in that area. He was thoroughly familiar with the locality and had seen posted along various sections of his route, signs reading "Slow, Children Playing." His counsel asked:

"Well, why were you driving along there at 15 miles an hour instead of 25 as permitted by the speed limit? A. I always made it a practice to drive through those places as slow as I possibly could without more or less stopping the bus. I have children of my own and I know how they act."

Just prior to the accident, he saw children "between two cars" playing. One little girl about three years old from between parked cars "ran out into the street. As soon as I hit my brakes she turned around and looked at me and ran back then on the sidewalk. That is when I seen the other two little girls. They jumped up and ran over to the sidewalk too." The driver brought the bus to a stop "a matter of a couple of feet" short of striking the child. Appellant's counsel computed for us the total critical elapsed time, and calculated at 22 feet per second the distance the bus must have traveled in that period. He argued that the driver's "reaction time" was three-fourths of a second, after he first saw the child had run in front of the bus and before he "hit the brake." The bus was almost to the rear of a parked car "where the girl ran out." Appellant's counsel sought to elicit from the driver that the bus traveled the length of that car "approximately 20 feet" from the time the driver saw the child until the bus came to a complete standstill. The driver answered "Maybe." Counsel said:

"Q. I take it you are not sure and you are giving your best approximation? A. That is right, sir."

Chief Volkman was the first officer to arrive, the driver said, adding that the bus had not been moved, and no parked car had been moved, so that in terms of where the bus and other cars were situated, "Things were exactly the way they were" when the bus was brought to a stop.

The appellant, of course, sought to develop that an emergency had been created without fault on the driver's part when the little girl without warning ran from between two parked cars; that the driver stopped suddenly and as quickly as could be, having no other course open to him under the circumstances unless he was to strike the child.

The appellee, in rebuttal, then called Chief Volkman. As to the general area, conditions there, the presence of children and such details, he agreed substantially with the testimony of the bus driver. As he found the situation at the time, referring to the positions of cars and certain other circumstances, he differed. For instance, he testified that for eight years the signs "Slow, Children Playing" had been on poles in the neighborhood. He cruised the District Heights area one-fourth or one-third of the time during the day, for the nearby apartments contained 960 units, some with from two to six children of both pre-school and school age. In the summer vacation period "these children are habitually running in and out of those streets * * * especially pre-school age." The appellee, he found, was prone on the floor of the bus. Some 10 to 15 feet *ahead* of the bus, a car was parked, but no car was alongside the bus. Two cars were parked to the rear of the bus, he said, the front end of the nearest of which was about opposite the right rear wheels or the rear of the bus. The bus was about 2 feet to the left of the parked automobiles.

It was arguable, accordingly, that if Chief Volkman was correct in his description of the scene, the child had run from an open space and not from between two parked cars, as the bus driver had testified. The appellant had introduced evidence designed to show that an emergency had been created by the sudden appearance of the child. The trial court then was entitled to know whether the circumstances were such that the bus driver by the exercise of proper foresight should earlier have seen the child, or whether in the exercise of the extraordinary degree of care which was owed to the passenger, he should the more certainly have apprehended the possibility of the very danger which appellant now would utilize to exculpate it from liability.[2] Appellant argues that evidence on this score should have been offered as part of the appellee's case in chief. Appellee, however, was entitled to the inference afforded by the *res ipsa* rule; indeed, she was not bound to know that appellant would so attempt to explain the occurrence. An issue of fact, therefore, developed in the light of appellant's purported explanation. We are satisfied that the trial judge, moreover, invested as he is with wide discretion as to the order of proof, did not err in his ruling.[3]

■ Called as a witness by the appellee was one Ostrom, former supervising sergeant in the accident investigation unit of the Metropolitan Police. He had retired after 28 years of service, the last 15 or 16 of which had involved preparation of negligent homicide and other accident cases for the courts, instruction in the traffic violation school and extensive appearances as an expert. Appellant voiced no question as to Ostrom's

qualifications. Appellant's safety director, one Simpson, made available to the appellee the bus which had been involved in the occurrence here. In Simpson's presence, the bus was photographed inside and out and many measurements were taken from various points of vantage. The photographs were received in evidence without objection.

After Ostrom's examination of the bus, he was able to testify that no object on or in the bus obstructed the view of the driver. The latter himself had testified that there was nothing to interfere with his view through the windshield, and further that he would have a far better view of the road than would a passenger seated in the second crosshand seat on the right side. The driver further testified that he would or should have been able to see a child emerging from the righthand side of the street before a passenger would do so. His testimony placed in the second righthand side seat, the only other passenger on the bus, a Mrs. Beach. She testified on the other hand, that the driver was "wrong"; she had been in the first seat, not the second. She had seen the child run out and get into "about the middle of the windshield." Measurements as well as photographs were taken from these respective positions, for Mrs. Beach had further testified that her view of the child included the child's head, shoulders and down to her waist. The driver estimated that the child was not over 35 inches tall.

Ostrom's measurements were not challenged. There seems to have been no question as to their accuracy. He testified that at the edge of the right front door there was a protective shield 40

2. Cole v. Capital Transit Co., 90 U.S.App. D.C. 289, 290, 195 F.2d 568, 569 (1952); and see note 1 supra.

3. Lyman v. Knickerbocker Theatre Co., 55 App.D.C. 323, 5 F.2d 538 (1925), relied upon by the appellant does not apply. There is no suggestion here that the appellant had provided an unsafe means of transportation. Appellant put its explanation of the occurrence in issue. Was it correct and adequate, or was its driver free from negligence when he took the steps he did take or negligently failed to take steps which, if taken, would not have given rise to the emergency? Neither court nor jury was bound to accept the purported explanation. Neither did so. And see Lachman v. Pennsylvania Greyhound Lines, 160 F.2d 496, 500, 501, 502 (4 Cir. 1947), involving also the law of Maryland.

inches high on the aisle side, up to 47 inches near the door, and 22 inches wide, which obstructed the forward vision of a passenger whether she be in the first or second righthand seat. The photographs in evidence disclosed the presence of that shield, so described, the protective purposes of which had been explained by the appellant's driver and its safety director.

Respective counsel agreed that the bus might be brought to the court house that the jury might examine it, sit in the seat and formulate their own conclusions. The trial judge refused to permit the Ostrom measurements to be reproduced with the bus in the jury's presence. The judge ruled "No, the bus is being brought down here for the purpose of observation. The Court will send the jury down. The jury will not comment. Counsel will not comment, nor will the Court comment. It is for observation only."

The action of the trial judge was within his discretion. The jury's observation afforded an opportunity for its members to check their own impressions formulated from the photographs and the other evidence in the case. The bus had in no physical way been altered from the time of the occurrence down to the date of Ostrom's measurements, the taking of the photographs or the time of the jury's examination of the vehicle. We find no error in the trial court's permitting the testimony of Ostrom as to the measurements or the jury's examination of the bus. Such objection as might be urged in the circumstances of this case runs to the weight to be given by the jury to such evidentiary information as was otherwise supplied for its guidance.

■ Ostrom was asked by counsel for the appellee:

"Are you able to state as a matter of opinion whether a driver, sitting in the driver's seat, or a passenger, seated in the right front cross-seat or the second cross-seat, would have a better chance of viewing a child emerging from the right side of the bus between two parked cars?"

Appellant's counsel objected. The witness answered:

"There was nothing at all to obstruct the view of the driver to the front. However, I was seated in the first and second cross-seat on the outside. My vision ahead was obstructed not only by the shield but also by the windshield—the aisle side."

He concluded that "the driver, of course, would" have the better view.

The witness was not asked for an opinion as to the ultimate issue to be decided by the jury. Questions eliciting opinions in that category are frequently objectionable, and when received, are closely limited. Perhaps here the objection should have been sustained. On the other hand, if we treat the ruling as error, it is of such scant significance that we perceive no possible prejudice to the appellant. The bus driver himself had so testified in almost identical fashion on the same point. The photographs demonstrated the range of visibility. The jury's own examination of the bus could have done no more than confirm a fact so obvious that we can all but take judicial notice of it. Moreover, appellant had the benefit of extensive cross-examination, in which full explanation was developed. Whatever infirmity may have crept into the case by virtue of Ostrom's having been allowed to express his opinion on this point is harmless.

■ At the conclusion of the charge, the trial judge asked if counsel had any "particular objections." Appellant's counsel answered "No, sir." Counsel for the appellee, however, voiced objection bearing upon the emergency, imminent peril, unavoidable accident and like aspects. The original instructions, read as a whole, cannot be said to have been incorrect, or as now reviewed, to be unfavorable to the appellant. The jury after some hours of deliberation submitted a question:

"Is the plaintiff responsible to prove negligence of the driver or is it the responsibility of the defend-

ant to prove the driver is not negligent?"

The trial judge advised counsel of the inquiry, and before the jury was called back, canvassed the question with counsel. The appellee, apparently sensing an adverse attitude on the part of the jury, submitted a suggestion as to further instruction. Counsel for the appellant, making his own appraisal of the situation, as a matter of tactics commented:

"They haven't asked for any instruction as to that * * * they simply want to be re-educated on preponderance of evidence and res ipsa loquitur doctrine, it is that simple. They aren't asking for the Court to go on and discuss the facts any further."

The trial judge in part reinstructed the jury, which without further objection by counsel, resumed its deliberations. Shortly thereafter appellant's counsel in chambers said "Would you note I object to the portion of the Judge's additional instruction where he indicated that the preponderance remained with the plaintiff."

Appellant now argues that there was such error as to require that we reverse and grant a new trial. Even though the objection was somewhat belated, we, nevertheless, have carefully considered the supplemental instructions and find ourselves satisfied that the jury could not have been misled. The inaccuracy in use of the term "preponderance" was more than overcome by the reinstruction, taken as a whole, particularly in light of the original charge. The jury's inquiry clearly related to the burden of proof. It was not in doubt about "preponderance." The trial judge specifically made clear that "The burden of proof does not shift to the defendant" although the burden was on the Transit Company to explain "what caused the sudden stop." It was again explained that the circumstance of the sudden stop

"alone is sufficient to permit the jury to infer that the carrier has been negligent unless, of course, the other evidence in the case overcomes the inference and leads the jury to find that the carrier was not negligent.

"On all the evidence, however, the question for the jury still is whether the preponderance of the evidence is with the plaintiff." [4]

This case, as the record shows, was thoroughly and fairly tried by alert, capable counsel. It was fully argued. We are left with the definite impression that the jury could not have failed to know precisely what the issues were. We think, as the law requires, that these parties received a fair trial.

We are satisfied that no substantial error has been demonstrated.[5]

Affirmed.

4. The judge had already adequately and correctly instructed the jury on "preponderance." We are satisfied that the error here complained of does not bring this case within D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 268, 266 F.2d 465, 469, cert. denied, 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed.2d 64 (1959).

5. Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Frank R. Jelleff, Inc. v. Braden, 98 U.S.App. D.C. 180, 189, 233 F.2d 671, 680 (1956); Molesworth v. Capital Transit Co., 94 U.S.App.D.C. 216, 214 F.2d 860 (1954); Sher v. DeHaven, 91 U.S.App.D.C. 257, 261, 199 F.2d 777, 781 (1952), cert. denied, 345 U.S. 936, 73 S.Ct. 797, 97 L. Ed. 1363 (1953).