DUDLEY GUILFORD *v.* YALE UNIVERSITY ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

450

Argued November 7, 1941—decided January 9, 1942.

*Martin E. Gormley,* for the appellant (named defendant).

*Morris Tyler,* with whom was *J. Stephen Knight,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff, a graduate of the Sheffield Scientific School of Yale University of the class of 1899, while visiting the university during the commencement period on June 20, 1939, fell on premises owned by the defendant and was injured. He brought this action claiming that his injuries were due to the negligence of the defendant. The case was tried to the jury and a verdict rendered in favor of the plaintiff. The defendant has appealed, the only ground of error claimed being the refusal of the trial court to set aside the verdict upon the defendant's motion. Unless otherwise indicated, defendant refers to the named defendant.

Viewing the evidence in the light most favorable to the plaintiff, the jury might reasonably have found the following facts: The Yale University authorities,

upon the application of the chairman of the reunion committee of any class, assign to it a building owned by the university as headquarters for members of the class returning to the reunion. Pursuant to that custom, a building formerly occupied by an organization known as the Wolf's Head Society had been assigned to the class of 1936 as reunion headquarters. It is customary for members of classes having reunions to visit the headquarters of other classes, and it is also the custom for those attending reunions to use the grounds about the headquarters building as a general gathering place, as the university authorities knew.

In the basement of the building in question was a toilet room and dining room and on the ground floor two club rooms. It was of substantial stone construction. The entrance was at the corner and consisted of two paved walks extending from the door of the building to Trumbull and Prospect Streets, respectively. Between these entrance walks was a circular grass plot. On the Trumbull Street side the entrance walk was bordered by a curb; next east of the curb was a grass plot twenty-two feet two inches in length. The width of the grass plot was eleven feet eight inches measured from the face of the building to a stone wall on the Trumbull Street boundary line. At the east end of the grass plot was a retaining wall, the top of which formed a parapet extending from nine and one-half inches to eleven and one-half inches above the level of the ground on the west side. On the east of the retaining wall there was a perpendicular drop from its top to the ground below of ten feet six inches, thus forming a pit.

The plaintiff had returned to New Haven for the fortieth reunion of his class. On the night in question, at about 12 o'clock, he, accompanied by one of his classmates, proceeded to these premises and there met

a number of younger men of the class of 1936. After arriving he spent a pleasant period with those gathered there, remaining until about 2 o'clock, at which time it was suggested that the place be closed. Those of the party then remaining left the building and proceeded to the sidewalk in the street where they talked for five or ten minutes. While they were conversing, the plaintiff expressed a desire to urinate and was informed that there was a toilet in the basement. At this time, the lights in the building had been turned out. The plaintiff did not re-enter the building but stepped back upon the premises, crossed the curb between the Trumbull Street walk and the grass plot and proceeded across the grass plot, walking about midway between the side of the building and the stone wall enclosing the property on the Trumbull Street side. There was a tree growing from the lower level beyond the retaining wall at the east of the grass plot. The shape of the tree was such that its top projected above the level of the top of the retaining wall. The plaintiff thought that the top of this tree was a bush growing on the grass plot, and walked towards it. He tripped over the parapet at the top of the retaining wall and fell to its bottom at the lower level. The region generally was well lighted at the time, but the plaintiff claimed that while he was able to see the street and the sidewalk very well, the ground under his feet was in a dark shadow and that he was walking into the shadow to find a secluded place near the bush to urinate.

If one comes upon the land of another by that other's invitation, he is entitled to the protection of an invitee. *Werebeychick* v. *Morris Land & Development Co., Inc.,* 108 Conn. 226, 228, 142 Atl. 739; *Ward* v. *Avery,* 113 Conn. 394, 396, 155 Atl. 502; *Carlson* v. *Associated Realty Corporation,* 114 Conn. 699, 702, 159 Atl. 885.

An invitation is implied where one person goes upon the land of another for their mutual benefit. *Pomponio* v. *N. Y., N. H. & H. R. R. Co.,* 66 Conn. 528, 537, 34 Atl. 491; *Reardon* v. *Shimelman,* 102 Conn. 383, 386, 128 Atl. 705. Passing both the claim of an express invitation, for which there is some basis in the admissions in the pleadings, and the question of mutual benefit, there is another set of circumstances from which an invitation may be implied. In *Sweeney* v. *Old Colony & Newport R. Co.,* 10 Allen (92 Mass.) 368, 373, Chief Justice Bigelow said this: "The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: a mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby." See also *Davis* v. *Central Congregational Society,* 129 Mass. 367, 371; *Furey* v. *N. Y. C. & H. R. R. R. Co.,* 67 N. J. L. 270, 274, 51 Atl. 505; *Kruntorad* v. *Chicago, R. I. & P. R. Co.,* 111 Neb. 753, 755, 197 N. W. 611; *Kalus* v. *Bass,* 122 Md. 467, 473, 89 Atl. 731. This general principle is in harmony with the rule as stated in cases like *Reardon* v. *Shimelman,*

supra. Applying it to the facts of this case it is clear that the jury could have found that plaintiff was on the premises as an invitee. As such the defendant owed him the duty of exercising reasonable care to have its premises safely constructed and maintained and to guard against subjecting him to dangers of which it was cognizant or which it might reasonably have anticipated. *Smith* v. *Union & New Haven Trust Co.*, 121 Conn. 369, 371, 185 Atl. 81; *Ward* v. *Avery,* supra.

Whether the defendant should have anticipated danger from the particular use made of the premises by the plaintiff presents a close question. An invitee who exceeds the limits of the invitation loses his status as such. *Knapp* v. *Connecticut Theatrical Corporation,* 122 Conn. 413, 416, 190 Atl. 291. Whether the plaintiff has done so in this case depends upon whether his use of the premises was such as the university might reasonably have contemplated. *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 529, 131 Atl. 501; *Meyer* v. *Saint Augustine's Church,* 109 Conn. 410, 413, 146 Atl. 817, *Knapp* v. *Connecticut Theatrical Corporation,* supra; 45 C. J. 830 et seq. The evidence clearly shows the open house, free and easy hospitality which exists in New Haven at reunion time and existed when this accident occurred. It does not subject the defendant to an undue burden to require that it exercise reasonable care to see that not only the buildings assigned for headquarters but also the surrounding grounds are free from traps dangerous to life and limb. The excellent photographs delineate just such a trap. The jury had the additional advantage of a view of the premises. We cannot say that they could not reasonably have reached the conclusion that the defendant was negligent as alleged and that the plaintiff was free

from contributory negligence and had not exceeded the limits of his invitation.

There is no error.

In this opinion the other judges concurred.