ESTELLE LAUBE *v.* ALBERT STEVENSON ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 8, 1950—decided January 30, 1951

*J. Warren Upson,* with whom, on the brief, was *Kenyon W. Greene,* for the appellants (defendants).

*Alfred L. Finkelstein,* with whom was *Helen L. McDonough,* for the appellee (plaintiff).

BROWN, C. J. The plaintiff brought this action against her daughter and the latter's husband to recover for personal injuries sustained by a fall on a cellar stairway in the defendants' home, alleged to have been due to their negligence. Judgment was rendered for the plaintiff against both defendants and they have appealed.

This summary of the court's finding as modified by us is sufficient to present the questions determinative of the appeal: The defendants owned a one-family house in Naugatuck where they lived with their infant child. A stairway led from the kitchen to the cellar. On January 27, 1949, the upper portion of the

stairway was in a defective and dangerous condition in that the landing at the top and the step below it were covered with a smooth, slippery linoleum, there was no handrail on either side of the upper half of the flight, there was no light fixture by which to light the top of the stairway, and near the middle of the front edge of the step below the landing the nosing was broken away for a space one-half by one and one-half inches at one point and one-fourth by one and one-half inches at another. This condition had existed and been known to both defendants during the entire year and a half they had owned the property and they had done nothing to remedy it. At the time of the plaintiff's fall, a vacuum cleaner stood on one side of the landing and an ironing board was hanging loose on the wall on the other side, as the defendants well knew.

Upon her occasional visits with the defendants in response to their standing invitation, the plaintiff, who lived in White Plains, New York, assisted with the household duties and the care of the baby. During such a visit, in the early afternoon of January 27, 1949, the defendant wife, while in the yard, asked the plaintiff to go down the cellar stairs to get a blanket and to bring it to her for the baby. The plaintiff had used the stairs but once, a year and a half before, and had no knowledge of the existence of the dangerous condition described above. Although the defendants knew of this condition and also that the plaintiff was not aware of it, neither of them gave her any warning. The plaintiff had no occasion or desire to go down the stairway and would not have done so except for the specific request made by the defendant wife. Pursuant thereto, the plaintiff opened the door to the cellar and found that the landing and the top of the stairs could not be illuminated by artificial light. Although by reason of such light as came through the opened door and from

cellar windows the stairway was not entirely dark, there was not enough light to enable her to distinguish everything on and about the stairway readily.

She proceeded carefully onto the landing and felt for a handrail. For lack of it, she tried to steady herself by putting a hand on the wall, but without success, for her right hand came in contact with the vacuum cleaner, and her left with the ironing board; neither gave her firm support. She then stepped from the landing onto the step below. The sole of her shoe struck the break in the nosing and she was thrown violently to the bottom of the stairs, sustaining the serious injuries complained of. The defendants could not reasonably have assumed that the plaintiff knew of or by a reasonable use of her faculties would observe the defective conditions described.

Upon these facts, the court was warranted in its conclusion that the defendants had sustained neither the defense of assumption of the risk nor that of contributory negligence. It further concluded that the defendants are liable to the plaintiff, whether she is held to have been an invitee or merely a licensee, as the defendants concede she was. Upon the facts found, her visit can only be characterized as social. For reasons which we will explain, it becomes necessary first to determine whether or not the plaintiff was what is termed an invitee, that is, a business visitor. If she was, the defendants are liable to her for breach of their duty to her as such. Whether one who visits a defendant's property for a purpose social in its nature as distinguished from a business purpose is an invitee and not a mere licensee is a question never passed upon by this court. There appears, however, to be a rather unusual unanimity of authority in other jurisdictions that such a visitor is a gratuitous licensee only and not a business visitor or invitee.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." Restatement, 2 Torts § 332. "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." 2 id. § 330. "A gratuitous licensee is any licensee other than a business visitor as defined in § 332." 2 id. § 331. As is further pointed out by comment a, 3, under § 331, the phrase "gratuitous licensee" includes "social guests who, in a sense, are persons temporarily adopted into the possessor's family." These definitions make clear the fundamental distinction between a business visitor and a gratuitous licensee, and the comment quoted precisely describes the situation of the plaintiff in the instant case. The following authorities serve to illustrate the application of the above definitions to the factual situations presented and support our conclusion that the present plaintiff was a gratuitous licensee and not an invitee or business visitor. *Gudwin* v. *Gudwin,* 14 Conn. Sup. 147, 149; *Mitchell* v. *Legarsky,* 95 N. H. 214, 216, 60 A. 2d 136; *Cosgrave* v. *Malstrom,* 127 N. J. L. 505, 508, 23 A. 2d 288; *Page* v. *Murphy,* 194 Minn. 607, 613, 261 N. W. 443; *Bugeja* v. *Butze,* 26 N. Y. S. 2d 989, 990; *Biggs* v. *Bear,* 320 Ill. App. 597, 599, 51 N. E. 2d 799; *Comeau* v. *Comeau,* 285 Mass. 578, 579, 189 N. E. 588; *Greenfield* v. *Miller,* 173 Wis. 184, 189, 180 N. W. 834; *Southcote* v. *Stanley,* 1 H. & N. 247, 250, 156 Eng. Rep. 1195; Pollock, Torts (14th Ed.) p. 422; notes, 12 A. L. R. 987, 92 A. L. R. 1005; 38 Am. Jur. 778, § 117; 65 C. J. S. 489, § 32e.

While the rule determinative of the landowner's liability to a gratuitous licensee has been stated in varied terms in the different jurisdictions, as appears from the

use of the expressions "gross negligence," "wilful and wanton act" and "active negligence" in some of the cases cited above, the rule in this state is clear and well established. It is true that "An owner of land ordinarily owes no duty to a licensee, any more than he does to a trespasser, to keep his premises in a safe condition because the licensee or trespasser must take the premises as he finds them and assumes the risk of any danger arising out of their condition." *Hayes* v. *New Britain Gas Light Co.*, 121 Conn. 356, 357, 185 A. 170. "When, however, the presence of a licensee upon the property of another becomes known to the owner, the latter may owe to him a duty not to subject him to danger." *Deacy* v. *McDonnell*, 131 Conn. 101, 104, 38 A. 2d 181. This is true not only where the defendant engages in some activity by which the plaintiff may be endangered. The owner of premises may also be under a duty to warn a licensee, of whose presence he becomes aware, of dangerous conditions which the owner knows of but which he cannot reasonably assume that the licensee knows of or by a reasonable use of his faculties would observe. *Ward* v. *Avery*, 113 Conn. 394, 396, 155 A. 502; *Deacy* v. *McDonnell*, supra; *Olderman* v. *Bridgeport City Trust Co.*, 125 Conn. 177, 182, 4 A. 2d 646, and cases cited. So we have said: "Though the plaintiff was a mere licensee, as claimed by the defendant, the duty devolved upon him, when her presence in the store became known, to use ordinary care to avoid injuring her by a positive act of negligence or a failure of duty which was the equivalent of such act." *Ward* v. *Avery*, supra, and cases cited. What this general statement comprehends has been more explicitly stated in these words: "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the

condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein." Restatement, 2 Torts § 342.

The application of this principle to the pertinent facts found in the present case leaves no doubt that the defendant wife was liable for her failure to warn the plaintiff of the dangerous condition of the stairway. The defendant wife knew of the condition, as the plaintiff did not, and was charged with knowledge of the peril to the plaintiff if she used the stairs as requested. By the same reasoning, the defendant husband is in a different position. Since the plaintiff had no occasion to use the stairs and would not have used them but for the specific request of the defendant wife, and since it does not appear that the defendant husband had any knowledge that use of the stairs by the plaintiff was contemplated, or that his wife was his agent in making the request, he was under no liability to the plaintiff as a gratuitous licensee.

Our decision in *Guilford* v. *Yale University*, 128 Conn. 449, 23 A. 2d 917, is not in conflict with that reached in the instant case, although the statement on page 452, "If one comes upon the land of another by that other's invitation, he is entitled to the protection of an invitee," is too broad, as is apparent from the rule herein declared. The ratio decidendi in that case was simply that the jury were warranted upon the evidence in concluding that the plaintiff, in response to the defendant's implied invitation, was a business visitor or invitee at the time of his injury. Under our decisions, the owner of an automobile is held to a duty of reason-

able care toward a guest riding with him even if no business relationship is involved. *Dickerson v. Connecticut Co.*, 98 Conn. 87, 90, 118 A. 518; see *Massa v. Nastri*, 125 Conn. 144, 149, 3 A. 2d 839. Any inconsistency between this rule and the one adopted in the present case is, in most instances at least, technical rather than substantial. An automobile guest is ordinarily in the immediate presence of the owner, who is thus charged with full knowledge of any threatened danger to him, and such danger, when liability ensues, results either from a positive negligent act by the owner or from its equivalent by reason of his failure to act. Since, as we have stated above, when "the presence of a licensee [social guest] upon the property of another becomes known to the owner, the latter may owe to him a duty not to subject him to danger" — a principle which gave rise in this case to the duty to warn — it is evident that any difference in the liability imposed upon the owner in the two situations is more apparent than real. The fact that *Dickerson v. Connecticut Co.*, supra, is cited at page 397 of *Ward v. Avery*, 113 Conn. 394, 396, 155 A. 502, in support of the rule which is there adopted confirms this conclusion.

There is error, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion BALDWIN and INGLIS, Js., concurred.

JENNINGS, J. (dissenting). *Guilford v. Yale University*, 128 Conn. 449, 23 A. 2d 917, was carefully considered, and this court unanimously approved a holding that the question whether a social visitor was a licensee or an invitee was one of fact. The circumstances in the case at bar were entirely different from those in the *Guilford* case but seem to me to be governed by the same principle. The matter is well summed up by Sir

Frederick Pollock, who in his work on Torts ([14th Ed.] p. 422) remarked: "[W]hy in common reason should a person invited for the occupier's pleasure be worse off than one who is about business concerning both?" The holding in the majority opinion doubtless accords with the weight of authority, but for the reasons stated in the *Guilford* case I do not see why a social visitor, at least one enjoying an express invitation, should not receive the protection accorded an invitee. See Prosser, "Business Visitors & Invitees," 26 Minn. L. Rev. 573. My inability to agree in the result is due only to the fact that the husband is found not liable. While I shall feel bound by the ruling in the majority opinion in the future, I am, as the author of the recent *Guilford* case, impelled to dissent.

O'SULLIVAN, J. (dissenting). I agree with the result in so far as it imposes liability upon Mrs. Stevenson.

To the reasons expressed by Justice Jennings in his dissent, in which I concur, I would add that the majority are creating an anomaly which, it seems to me, cannot be sustained in logic. The following illustration is but one of many which might be cited to demonstrate my point. By virtue of the opinion, the law now appears to be that a guest in an automobile is an invitee, so-called, towards whom the host must exercise reasonable care, while the same guest, merely by stepping out of the automobile upon his host's property, instantly loses his status as an invitee and acquires that of a licensee, protected by a far more limited standard of care than that to which he was entitled, seconds before, as a passenger in the automobile.

Regardless of the purpose which may prompt the owner of realty, he should be required to exercise reasonable care towards those who have come upon his property by virtue of either his express or his implied

invitation. This rule should apply to all so invited, whether they be milkmen, grocers, or social guests. The rule is sound and conforms with common sense. It will eliminate the anomaly mentioned above. And, finally, it is supported by the *Guilford* case, which protestations to the contrary notwithstanding, is, I regret to say, now overruled.