26 N.J. Super. 607 (1953)
98 A.2d 348
WINIFRED A. ATWOOD AND HAROLD S. ATWOOD, JR., PLAINTIFFS,
v.
BOARD OF TRUSTEES OF FIRST PRESBYTERIAN CHURCH OF CALDWELL, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided June 26, 1953.
Messrs. Bennett and Shepard (Mr. Robert B. Shepard, Jr., appearing), attorneys for plaintiffs.
Mr. Wilbur A. Stevens, attorney for defendant.
*608 HUGHES, J.S.C. (temporarily assigned).
The motion for summary judgment is here predicated upon an agreed stipulation of fact and projects for determination an issue which the attorneys have regarded as novel in certain aspects. Defendant maintains and operates a church and controls the premises thereof, including a walkway to the church building. The female plaintiff was a teacher in the Sunday School conducted by the church in the main building and she served without compensation and on a voluntary basis. While on the premises and proceeding to teach her Sunday School class, she slipped and fell on ice on the walkway over which persons going into the church normally travelled, and was injured. Her husband sues per quod.
The sufficiency of this pleaded setting to support an action for damages for injuries sustained by negligence of defendant is challenged by the motion, based upon the concept that plaintiff was a "social guest" to whom was due only the duty owed a licensee, as distinguished from a "business invitee," to whom would be owed the duty to exercise reasonable care. The distinction between these categories of visitors has recently been discussed by our Appellate Division in the case of Vogel v. Eckert, 22 N.J. Super. 220 (1952). We are not here concerned with any defect in the nature of a "trap" or nuisance created by or known to the invitor, nor with the element of "active negligence" sometimes used to measure the scope of duty (Lordi v. Spiotta, 133 N.J.L. 581 (Sup. Ct. 1946); Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693, 25 A.L.R. 592 (Sup. Ct. Err. 1951)), nor with comparable "active wrongdoing" in the creation of a source of danger (Morril v. Morril, 104 N.J.L. 557 (E. & A. 1928)). It is frankly conceded that plaintiff was an invitee in the general sense. Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893). For reasons irrelevant here, defendant has forsworn the defense available to a charitable institution. These elements apart, the sole question is the classification of plaintiff's status into a category embracing or negating the duty of exercising reasonable care to render *609 the premises reasonably safe for the use implied in the invitation.
The English cases limit the term "invitee" to those who are invited into the premises of the owner or occupier for some purpose, either business or of mutual interest; and those who are invited as guests, whether from benevolence or for social reasons, are not considered in law invitees but licensees. Latham v. Johnson, 1 K.B. 398 (1913); Southcote v. Stanley, 1 Hurst & N. 247; 156 Eng. Repr. 1195; 25 L.J. Exch. (N.S.) 339. Such distinction is also noted in our cases. Morril v. Morril, supra; Lewis v. Dear, 120 N.J.L. 244 (E. & A. 1938); Vogel v. Eckert, supra. And while, of course, the implications of the "social guest" rule are not coextensive with presence in a dwelling as distinguished from a building devoted to other use (Southcote v. Stanley, supra; Guilford v. Yale University, 128 Conn. 499, 23 A.2d 917 (Sup. Ct. of Err. 1942)), the accent in the precedents upon the concept of "home," "guest," "neighbor," and the like is not without significance (Cosgrave v. Malstrom, 127 N.J.L. 505 (Sup. Ct. 1941)), and implies a mutuality of interest in the sense of enjoyment incompatible with the concept of strict responsibility for the exercise of reasonable care which is characteristic of more formal relationships. Vogel v. Eckert, supra.
In this sense, the defendant would resolve the issue by the answer to this question:  "Is the operation of a church in the nature of a business or in the nature of a social gathering?" I think the solution must rest upon a less limited basis. It seems clear to me that the operation of a church is more than a social gathering. To very many people it concerns a business of extreme moment, however unworldly. A more superficial approach may de-emphasize the religious worship to which the business of the church is dedicated, and notice predominantly the usually enjoyable social aspects incident to its life. Aside from these considerations, however, the circumstances determinative of the "business" nature of the church visitor seem to me of broader reach than the functional nature of the church itself, and necessarily inclusive *610 of the purpose of the visit, the accrual and comparison of benefits therefrom to the invitor and invitee, and like elements. One would suppose, for instance, that a caterer engaged to serve an affair on the church grounds, of purely social import, would be in the nature of a "business" visitor. On the other hand, a casual sightseer, attracted by the beauty of the church appointments and entering while no church activity proceeded, and unthinking of religious worship, might seem so remote from the church's interests as to be classifiable as a "social guest." Such a distinction, if plausible, would rest on circumstances other than the intrinsic nature of the church as a business project or as a social activity.
Assuming, then, that resort must be had to such totality of circumstance in order to classify an invitee in one or the other category, it is apparent that the nature of a visit, the motives which inspire it and the benefits which flow from it, inter alia, are factors of at least equal relevance as would be the identity and nature of the place visited. In a practical sense, the benefits of the teaching activity which brought plaintiff to the church premises on the date of injury were predominantly those of the church, despite the undoubted spiritual exaltation that a voluntary teacher of such presumable zeal would experience. Such inner satisfaction is personal, difficult of external appaisal, and little different from the sense of accomplishment flowing from the performance of more mundane responsibilities. I do not see how such an intangible could even be as legally significant as the enjoyment of the creature comforts or companionship experienced by a social guest in a private home, much less attain the legal implications of financial gain or like true benefit.
In this sense, despite the voluntary and unrecompensed status of plaintiff, she entered these premises as a matter of duty to the defendant, and for the furtherance of the important interest, albeit a spiritual one, of the church, as distinguished from her own. She was in my view a "business" invitee and there was owed her the duty of exercising reasonable *611 care for the maintenance of the premises in a reasonably safe condition for her use. A "business visitor" is defined by the Restatement of the Law of Torts, sec. 332, as a person invited to come upon land in possession of another for a purpose directly or indirectly connected with business dealings between them. Guilford v. Yale University, supra.
It does not appear that plaintiff is a member of the church congregation, but that fact, under the circumstances, would not change my opinion as to her status as an invitee to whom was owed the duty of reasonable care. She charges a breach of this duty and since on this motion that allegation is regarded as true, she is entitled to an opportunity to prove it at trial.
The motion for summary dismissal is denied.