**Donald H. KENWARD, Plaintiff-Appellant,**

**v.**

**Jewell HULTZ, Defendant-Respondent.**

No. 23718.

Kansas City Court of Appeals.

Missouri.

June 28, 1963.

George W. Meyer, Roger W. Penner, Meyer, Smith, Shute & Penner, Kansas City, for appellant.

Fred J. Freel, Norman O. Sanders, Sheridan, Baty, Markey, Sanders, Edwards & Carr, Kansas City, for respondent.

CROSS, Judge.

Plaintiff sues to recover damages for personal injuries suffered on defendant's premises when a dirt trench in which he was digging caved in, and a large quantity of dirt partially buried him. The case was tried to a jury which returned a verdict for plaintiff in the sum of $3000.00, upon which judgment was duly entered. On motion by defendant, the trial court set aside the verdict and judgment in favor of plaintiff and entered judgment in favor of defendant. Plaintiff appeals.

All of the evidence in the case was adduced by plaintiff, who testified in his own behalf, introduced a deposition of the defendant and also called and examined defendant as a witness. At the conclusion of plaintiff's evidence, defendant filed a motion for a directed verdict which the trial court denied. Defendant declined to go forward with any evidence and rested upon his motion. The facts which follow were developed by plaintiff's evidence.

Plaintiff and defendant are brothers-in-law, the former having married the latter's sister. They are "good friends" who visit each other and "more or less helped each other back and forth", without receiving any pay for so doing. Plaintiff is a "combustion engineer" employed by the Sheffield Steel Company. He is a graduate of Kansas University with a Bachelor of Science degree in mechanical engineering. Defendant has been employed primarily as a truck driver and a salesman.

As noted above, plaintiff was injured while working in a trench, on defendant's residence property, which had been excavated for the purpose of re-laying sewer pipe. The trench had been principally dug by defendant, with some help from his son, on the day before and on the morning of the casualty, and was about 2½ to 3 feet wide, 7 feet deep and approximately 60 to 70 feet long. It had straight, vertical walls and was not shored or braced. The dirt which had been removed in the digging process was piled mostly on the east side of the trench (which ran north and south), and was piled on that side to within a foot of the edge of the excavation and to a height of 5 or 6 feet.

Before defendant started excavating the trench he had called and requested plaintiff to help on the project. In response plaintiff presented himself at defendant's premises to assist in the digging operations. He arrived at about nine o'clock in the morning on the day after defendant started the work and found defendant working in the bottom of the trench. After talking to defendant for a minute or two,

plaintiff also descended into the trench and commenced digging to uncover the sewer pipe. After throwing out a few shovelsful of dirt, plaintiff discovered that the trench was not coincident with the sewer line and talked to defendant about "the problem of the sewer pipe being off to the side of the trench back in the wall", (on the east side of the trench where most of the dirt had been piled). Defendant then asked plaintiff to undercut the wall in order to expose the sewer tile. Plaintiff began to dig "into the wall" and shortly thereafter, the trench collapsed at the place plaintiff had been undercutting and covered plaintiff's body "about" up to his shoulders. The "chunk" of dirt that fell on plaintiff was about 6 to 8 feet wide and varied in thickness from about a foot to 18 inches at the top to about 2½ to 3 feet at the bottom. Plaintiff received painful, permanent and disabling injury to his right knee.

The defendant testified that the soil in which the trench was dug was soft, sandy, loose and crumbly—"what you might call river bottom soil"; that he did not warn plaintiff of the nature of the soil because he "didn't think of it"; that the soil he had piled up on the east side of the trench had "considerable weight to it"; that he had no knowledge and saw nothing to indicate that there was any danger to plaintiff in going into and digging in the trench; that it didn't occur to him that the piling of dirt on top of the trench increased the danger of it caving in; that there was no appearance, anywhere, that the trench was dangerous and unsafe; and, that "the work that had to be done in removing this tile was obvious". Defendant stated, "I wouldn't have been in there if I had thought there was any danger". There was no discussion at all between plaintiff and defendant about whether or not it was dangerous to work in the trench. Defendant further testified that the work plaintiff did was for the sole benefit of defendant and his wife.

Plaintiff testified that he did not observe any dangers of any kind when he arrived

on the scene or after he got down into the trench. He stated that the dirt he saw piled up on top of the trench was black and "looked like ordinary dirt", that he noticed nothing unusual about the dirt he shoveled out, and didn't notice anything in all the time he was shoveling that the earth was sandy or crumbling but that "if I had of I'd have sure got out of there". It was obvious to plaintiff that the trench was not braced or shored. Plaintiff neither expected nor received any pay for his assistance in digging the trench.

Some time prior to the events narrated above, defendant had helped plaintiff dig a trench on the latter's property from the house to a septic tank for the purpose of replacing lateral pipes. This operation was similar in nature to the trench excavation on defendant's property, except that the plaintiff's trench was smaller and shallower. Defendant received no pay for helping plaintiff on that occasion.

Plaintiff submitted his case to the jury on the theory that the trench wall was dangerous and unsafe and liable to cave in and injure a person undercutting into the east wall because it was composed of soft, sandy loam of such character that, unless shored or braced, would likely crumble and collapse, and because of the added weight of the dirt which defendant had removed and piled on top of the ground near the edge of the trench; that defendant knew or should have known of such danger and knew or should have known plaintiff was unaware thereof, but that he negligently failed to warn plaintiff of this peril; and, that defendant negligently instructed plaintiff to undercut the east bank.

The trial theory of defendant was that plaintiff failed to make a submissible case of actionable negligence because the evidence showed that any danger of a cave-in of the trench wall resulting from undercutting was obvious and equally apparent to plaintiff as to the defendant, that plaintiff voluntarily assumed the risk of injury;

and, that plaintiff was guilty of contributory negligence which barred his recovery.

After the jury returned its verdict for plaintiff and judgment was rendered thereon, the defendant timely filed his motion to set aside that verdict and judgment and to enter a judgment in his favor in accordance with motions for directed verdict which he had previously filed, and, in the alternative, a motion for a new trial. The trial court sustained the first of the alternative motions without specifying the ground for such action, set aside the judgment previously rendered in plaintiff's favor, entered judgment for defendant, and overruled defendant's alternative motion for a new trial.

Plaintiff's first point is a complaint that the trial court failed to specify the ground upon which it set aside the verdict and judgment in plaintiff's favor and rendered judgment in favor of defendant, notwithstanding the motion upon which the court acted alleged numerous grounds. Plaintiff insists that such failure is a violation of the Civil Rules. We believe that plaintiff has only technical grounds for making this complaint.

The filing of defendant's after-trial motion to set aside the verdict and judgment and for judgment in accordance with his motion for a directed verdict together with his alternative motion for a new trial is sanctioned by Civil Rule 72.02, V.A.M.R. The same rule prescribes the duty of the trial court in acting upon those motions. The rule does not mandatorily require that the court shall specify its reason or ground for reopening the judgment, and directing the entry of judgment as if the requested verdict had been directed. In this case the order of the court is in literal compliance with Rule 72.02.

However, decisions of Missouri appellate courts indicate that the better practice would be for the trial court to specify its reasons for setting aside a previously rendered judgment and entering a judgment in accordance with a motion for directed

verdict. In Johnson v. Kansas City Public Service Co. et al., 358 Mo. 253, 214 S.W. 2d 5, the Supreme Court stated: "The purposes of the new Code and Rules are to promote the orderly administration of justice and to seek the just, speedy, and inexpensive determination of every action. Code, §§ 2 and 10(b). When allowable after-trial motions are filed together with a motion for new trial with a prayer for relief in the alternative, the trial court, if it sustains the after-trial motion, should also pass on the motion for new trial, making its ruling in the alternative, and specify, as contemplated, the ground or grounds for its action." Also, see Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782.

■ Plaintiff complains that an undue hardship has been cast upon him by the trial court's failure to specify the grounds for setting aside the jury's verdict and the judgment for plaintiff and entering judgment for defendant. Plaintiff insists that he is entitled to an order requiring defendant to assume the burden of proof to sustain the trial court's after-trial rulings, or, in the alternative that the verdict and judgment in his favor should be reinstated. We find no support for these contentions in the authorities cited by plaintiff. The situation before us is not within the operation of Civil Rule 83.06(b) which provides that a respondent may be compelled to carry the burden on appeal *when the trial court grants a new trial* without specifying the grounds therefor. Even if there were merit in these contentions, plaintiff, having complained for the first time in this appeal, has waived the right to assert them.

The grounds upon which defendant relies to support the trial court's action have been accurately anticipated by plaintiff in three additional points contained in his brief. It is contended by plaintiff that the court erred in ruling he was not entitled to recover because (1) plaintiff made a submissible case of actionable negligence, (2) plaintiff was not barred from a re-

covery under the doctrine of assumed or incurred risk as a matter of law, and (3) plaintiff was not guilty of contributory negligence as a matter of law. These three points are met and countered by defendant in his brief, and the appeal issues are thus drawn.

In the natural order of these questions, we next consider whether plaintiff made a submissible case. To that end we must first determine the extent of legal duty that was incumbent upon defendant to protect plaintiff from injury. Plaintiff insists that when he came upon defendant's premises to render a service for defendant's benefit he became an invitee to whom defendant owed a duty to exercise ordinary care to prevent plaintiff's injury, and that such duty was breached by defendant with resultant injury to plaintiff. Defendant submits that plaintiff was not an invitee, but was a mere licensee, to whom no duty was owed by defendant except not to harm him intentionally or wantonly, or to injure him by active negligence. In the alternative, defendant says that even if plaintiff is held to be an invitee, the evidence considered in the light most favorable to plaintiff fails to prove that his injury was caused by any act or omission on the part of defendant that amounts to a breach of any legal duty owed by him as a landowner to plaintiff as an invitee or business visitor.

In Miller v. Cracchiola, Mo.App., 321 S.W.2d 18, the court was confronted with a similar question. There the plaintiff sustained injuries at the home of her son-in-law and daughter, defendants in the case. Plaintiff had gone to those premises, at the express request of her daughter, for the sole purpose of baby-sitting with defendants' child. Plaintiff contended that inasmuch as her presence at defendants' home was an economic benefit to them, she had acquired the legal position of a business invitee. Defendant, on the other hand, contended that plaintiff was a gratuitous licensee—a social guest. In its opinion the court stated that the

tenor of other cases involving similar relationships between the parties [1] indicated that "where, as here, there is a close family relationship between the visitor and the owner or occupant of a home, persuasive evidence of a true business relationship is required to establish the status of the visitor as that of business invitee". However, in view of the conclusion the court had already reached on the issue of negligence, it assumed for the purpose of its opinion, without so deciding, that plaintiff was an invitee.

Likewise, in this case, where the parties are also related by ties of affinity, we will assume for the purposes of this opinion, without deciding, that plaintiff was an invitee, or business visitor on defendant's premises at the latter's express invitation, and proceed to determine the remaining appeal issues under that assumption.

In Capobianco v. Yacovelli Restaurant, Inc., Mo.App., 360 S.W.2d 302, 305, the court said: "It is an elementary principle of the law of torts that there can be no actionable negligence in the absence of the existence of some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant, with the injury suffered by the plaintiff directly attributable thereto, and flowing therefrom". Furthermore, as the Supreme Court cautions in Cameron v. Small, Mo. Sup., 182 S.W.2d 565, " * * * we must have a regard for the distinction between negligence in its colloquial meaning, the want of ordinary care; and actionable negligence, negligence which breaches a duty owed the person injured". Precisely,

then, what duty did the defendant owe to his plaintiff brother-in-law under the facts in this case?

■ It has often been said by the courts that the owner, occupant, or person in charge of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety. [2] Such statements are obviously in the nature of broad generalization and do not encompass the specific elements necessary to constitute a complete and definitive statement of legal duty. The law on the subject is clearly set forth in 2 Restatement of the Law of Torts, Sec. 343, page 938, as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm * * *". The foregoing statement of the law is "firmly imbedded in the jurisprudence of this jurisdiction" [3], and has been repeatedly approved by the courts.

■ In the application of the rule above quoted it has been uniformly held that the owner or occupier is not an insurer of the business invitee's safety, Main v.

1. Laube v. Stevenson, 137 Conn. 469, 78 A. 2d 693, 25 A.L.R.2d 592; Lubenow v. Cook, 137 Conn. 611, 79 A.2d 826; Colbert v. Ricker, 314 Mass. 138, 49 N.E.2d 459, 147 A.L.R. 647; Mitchell v. Legarsky, 95 N.H. 214, 60 A.2d 136.

2. Wolfson v. Chelist, Mo.App., 278 S.W.2d 39, affd., Mo.Sup., 284 S.W.2d 447; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Edwards v. E. B. Murray & Co., Mo.App., 305 S.W.2d 702; Miller v. Cracchiola, Mo.App., 321 S.W.2d 18.

3. Wilkins v. Allied Stores of Missouri, Mo. Sup., 308 S.W.2d 623; Dean v. Safeway Stores, Mo.Sup., 300 S.W.2d 431; Also see Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226; Capobianco v. Yacovelli Restaurant, Inc., supra; Dixon v. General Grocery Co., Mo.Sup., 293 S.W.2d 415; Gruetzemacher v. Billings, Mo.Sup., 348 S.W.2d 952.

Lehman, 294 Mo. 579, 243 S.W. 91, and that "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, and in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." Dixon v. General Grocery Co., Mo.Sup., 293 S.W.2d 415.[4]

In Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226, the Supreme Court said: "It follows that when the condition contended to constitute an unreasonable risk is obvious to one in the exercise of ordinary care, or is actually known to the invitee, there is no duty on the owner or occupier to warn him. Summa v. Morgan Real Estate Co., supra (2) [350 Mo. 205, 165 S.W.2d 390]; Wiedanz v. May Department Stores Co., Mo.App., 156 S.W.2d 44(4). Therefore an owner or occupier is not liable for injuries resulting from open and obvious conditions which are or should be as well known to the invitee as to the owner or occupier. Douglas v. Douglas, Mo.Sup., 255 S.W.2d 756 (5); Cameron v. Small [Mo.App., 182 S.W.2d 565], supra (6); Stoll v. First National Bank of Independence, 345 Mo. 582, 134 S.W.2d 97, 100". And, in Dixon v. General Grocery Co., supra, the Supreme Court also stated (in reference to similar rulings): "These decisions mean that an inviter is under no duty to protect an invitee who is in an equal position to protect himself." To the same effect is the rule stated in Prosser on Torts, 2d Ed., Sec. 78, p. 459, approved in Stafford v. Fred Wolferman, Inc., Mo.Sup., 307 S.W.2d 468, quoted as follows: " * * * in the usual case, there is no obligation to protect the invitee against dangers which are known to him, *or which are so apparent that he may reasonably be expected to discover them* and be fully able to look out for himself".

Thus, as the courts have often held, *the true basis of a landowner's liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know.* Capobianco v. Yacovelli Restaurant, Inc., supra; Harbourn v. Katz Drug Co., supra; Stafford v. Fred Wolferman, Inc., Mo.Sup., 307 S.W.2d 468; 65 C.J.S. Negligence § 50, p. 543; 38 Am.Jur., Negligence, Sec. 97, p. 757.[5]

Adhering to the foregoing principles of law, we conclude that there is no substantial evidence before us to support a finding that defendant has breached any legal duty owing to plaintiff. There is nothing in the record to show that when plaintiff came upon defendant's premises and started to dig in the trench there was any condition present involving an unreasonable risk to his safety or that constituted a hidden danger, trap, snare or pitfall. The condition of the trench and any risk incident to digging therein were as apparent and obvious to plaintiff as to defendant. Plaintiff testified that he ob-

---

4. Citing, 65 C.J.S. Negligence § 50, p. 541; Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226, 229, 74 A.L.R.2d 938; Dixon v. General Grocery Co., Mo.Sup., 293 S.W.2d 415; Small v. Ralston-Purina Co., Mo.App., 202 S.W.2d 533.

5. Also see 20 R.C.L., par. 52, p. 56, which states: "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger thereof to persons going on the property. It is when the perilous instrumentality is known to the owner and occupant and not known to the person injured that a recovery is permitted, * * * and, hence, there is no liability for injuries from dangers that are obvious or as well known to the person injured as to the owner or occupant." This rule is quoted in Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369, with the statement that the text "is supported by abundant authority, and has become well settled in Missouri."

served that the trench had straight, vertical walls, that it was unshored, and that everything about it was open, obvious and apparent to him. He saw its length, breadth and depth, and observed the nature and quality of the soil, both excavated and unexcavated. By the use of his senses plaintiff could know and appreciate any existing danger to the same extent as could defendant, with whom he stood in at least equal position to protect himself, unless, for some reason disclosed by the evidence, defendant had superior knowledge of the risks involved in the work—in particular, the likelihood of the trench wall collapsing.

We believe there is no evidentiary basis or justification for a finding or any inference, reasonable in nature, that defendant's knowledge of the situation in question and the risk involved was any greater than that possessed by plaintiff. In fact, it appears more reasonable to believe that superior knowledge and experience were on the side of plaintiff, inasmuch as he was a graduate engineer, necessarily schooled in the laws and forces of nature and devoted by occupation to their use, and, as the evidence shows, familiar to some extent with construction work; whereas, defendant was a salesman and truck driver without previous knowledge of or experience in construction work or excavations—except for his work in the two trenches dug on the premises of the respective parties and "digging out skunks" when he was in high school.

It should have been equally apparent to plaintiff, the engineer, as it was to defendant, the layman, that to undercut the trench at its base and remove the supporting dirt might activate the force of gravity and cause the overlying mass to collapse and fall. However, having undertaken that course of action, even though he did so at defendant's request, plaintiff was in a position of superior opportunity to observe the progress of such work and to gauge the effect of his shovel as he continued to undercut the soil, inasmuch as he was the very instrumentality of such operation.

In that situation, it devolved upon plaintiff to protect himself from a danger better known to himself than to his brother-in-law.

In view of our conclusion that plaintiff has not established the breach of a legal duty on the part of defendant, we necessarily rule that plaintiff has not made a submissible case. That reason alone is sufficient to justify the trial court's action in sustaining defendant's after trial motion, setting aside the verdict and judgment for plaintiff, and entering judgment for defendant. Therefore, it is not necessary that we decide, as separate points, whether plaintiff was barred from recovery under the doctrine of assumed risk or because he was guilty of contributory negligence, as matters of law.

The judgment is affirmed.

All concur.