HARDY, Judge.
This is an action ex delicto for the recovery of damages in the nature of personal injuries, and plaintiff has appealed from judgment sustaining defendant’s exception of no cause and no right of action.
Briefly stated, the issues presented by this appeal require determination (1) as to plaintiff’s status as an invitee or licensee; (2) whether plaintiff has adequately alleged actionable negligence on the part of defendant, and (3) whether plaintiff assumed the risk of a known hazard or danger.
We proceed to a consideration of the questions noted on the basis of the acceptance of the pertinent facts set forth in plaintiff’s petition which are outlined as follows:
Plaintiff, seventy-one years of age, received serious injuries while a spectator at a Junior High School football game on October 17, 1963. The game was being played between teams representing the Midway and Lakeshore Junior High Schools in Shreveport, to which plaintiff had been invited by her grandson, a player on the Midway team. The game was a regularly scheduled contest, sponsored, conducted and supervised by defendant through its officers, agents and employees as part of a regular program of athletic activity established and encouraged by defendant, which provided for the organization and equipment of the teams representing the junior high schools of the City as members of a football league playing regularly scheduled and advertised games, publicized in local daily newspapers, to which attendance of the general public and especially friends and relatives of the players and the students was encouraged.
Alleging that the game in question was attended by a crowd of some 1,500 to 2,000 spectators, plaintiff asserted that no accommodations were provided for the spectators, no areas were restricted or delineated, nor was any attempt made to control the crowd.
The specific facts relating to the occurrence of the accident as stated by the petition were that plaintiff was standing near the south 40 yard line of the playing field, separated from the field of play by three ranks of spectators that seriously obstructed and obscured plaintiff’s view of the playing field. During the progress of the game a play was run out of bounds of the playing field, the spectators in front of plaintiff gave way and plaintiff was struck and knocked down by the players, receiving the injuries for which she seeks damages.
Generally, plaintiff charges negligence on the part of defendant in failing to take any precautions for the protection of spectators, and specifically for failing to restrict the spectator areas to safe distances from the playing field; failing to make any nature of provision either by signs, barricades or ropes which would prevent the encroachment of the crowd within a dangerous proximity to the field of play; failure to control the spectators and permitting the play of the game to be continued at a time when the safety of the spectators was endangered by their position along the boundary of the playing field.
Other material allegations of the plaintiff are that she had never before attended a football game and had no actual knowledge of the rules or customs of the game.
One of the issues presented relates to the status of plaintiff with respect to her presence on property of defendant at the time of the accident. It is urged on behalf of plaintiff that she was an invitee, and, to the contrary, counsel for defendant argue that plaintiff should be accorded, at best, the status of a licensee. We have been unable to find anything approaching direct authority on this point with respect to cases involving governmental agencies or subdivisions in the jurisprudence of our State, but we have encountered no difficulty in reaching the conclusion, under the allegations of her petition, that plaintiff has adequately established her right to be considered as an implied, if not an express, invitee.
*704 The reasons for this conclusion are obvious. It is alleged that the football game was played between two junior high school teams as a part of an established program of athletic activity in the public schools, approved, directed and supervised by authority of defendant; the game was played upon school property, was publicized in the daily newspapers of the City of Shreveport. The answers to interrogatories propounded in connection with plaintiff’s petition disclose that coaches and assistant coaches were provided for the school teams involved on this particular occasion, together with others. It would be illogical, unreasonable and unrealistic to consider that the school authorities did not extend an implied invitation to the general public to attend the athletic event here under consideration, together with others of a similar nature. It is a matter of common knowledge that the interest and support of the public generally, and particularly the interest of members of the families of students in the public schools is constantly being promoted by school authorities in every area. This position is not only understandable but, in a very real sense, is essential for the progress, improvement and development of our public educational system. To think otherwise would be to deny the application of ordinary standards of common sense as well as to ignore the considerations of improvement of the general welfare.
These purposes are not restricted to athletic events. There are almost innumerable activities related to the maintenance, operation and support of the public school system which are sponsored or approved by the school authorities and which are programmed and held on school property, both inside and outside of the school buildings. Among these may be noted, by way ■of specific illustration, meetings of Parent Teachers Associations, attended not only by parents and teachers but by guests; band concerts, plays and other dramatic productions, etc. In connection with school activities the athletic programs are of particular significance. The support of the public, and especially the friends and families of the students participating, is encouraged in every way for the obvious purpose of elevating the morale of the students and enhancing a general awareness of school programs and their contribution not only to formal educational processes but to physical fitness, health, and all areas of character building. Under these well known and uniformly approved circumstances, to hold that a member of the general public, and more particularly one who enjoys the highly respected relationship of a grandmother, is not a welcome guest, and, certainly, by implication, an invitee of a school system, would, in our opinion be a reductio ad absurdum.
Text authorities and cases from other jurisdictions specifically approve this conclusion, for example:
Prosser, Law of Torts, 2d Edition, verbo “Invitees”, page 452; Cooley on Torts, Volume 2, page 1259, 3d Edition;
Smith v. United States, 9 Cir., 337 F.2d 237 (1964);
Ashley v. United States, 8 Cir., 326 F.2d 499 (1964);
Caldwell v. Village of Island Park, 304 N.Y. 268, 107 N.E.2d 441 (1952);
Le Roux v. State, 307 N.Y. 397, 121 N.E.2d 386 (1954);
Brown v. City of Oakland, 51 Cal.App.2d 150, 124 P.2d 369 (1942);
Lorenz v. Santa Monica City High School District, 51 Cal.App.2d 393, 124 P.2d 846 (1942);
Guilford v. Yale University, 128 Conn. 449, 23 A.2d 917 (1942).
Tlie above cited cases deal respectively with instances in which a thirteen-year old Pony League baseball player, injured on an Air Force Base field, was held to be an invitee; a visitor riding through a National Park and bitten by a bear was held to be an invitee; a fourteen-year old girl on a city-owned beach was held to be an invitee and the city’s failure to properly supervise *705 the crowd on the beach and to protect the users of the public property was considered to be an issue of negligence dependent upon t-he establishment of attendant circumstances as to the degree of care reasonably necessary; a berry picker injured on a State forest and hunting ground preserve was held to be an implied invitee; a child attending a high school baseball game with her parents was injured while playing in a sandbox some twenty yards from the baseball area and was held to be an invitee and allowed recovery on the ground of breach of the duty of reasonable care; a sixty-six year old woman, attending a P.T. A. sponsored movie held under the approval of the School District, was injured by slipping on a waxed floor and was held to be an invitee and entitled to recovery; a male alumnus of a University was injured while attending an alumni meeting on the campus and was found to be an implied invitee. In this case, Guilford v. Yale University, supra, the court stated the distinction between passive acquiescence by an owner or an occupier with respect to the use of his property and a direct or implied invitation which induces persons to enter on the property.
With reference to the question of negligence, the position of defendant, as evidenced by the argument of counsel’s brief, is that it has no obligation to erect stands or “rope off spectator areas”, and is vested with a right “to believe that adult spectators at a football game know enough to keep out of the field of play.” This argument appears to be completely without merit, since its application would entirely eliminate the necessity for the provision of reasonable precautions, and further because it appears to make a distinction with respect to the degree of care based upon the age and knowledge of the spectators. Counsel relies upon Jones v. Alexandria Baseball Association (La.App. 2nd Cir., 1951), 50 So.2d 93. The cited case is authority only as to the conclusion that the defendant was not required to protect its patrons against every possible danger or hazard. It should be noted that the opinion of the court was careful to qualify its finding in these words:
“Those who patronize such events must assume the risk of injury unless carelessness or negligence with respect to the neglect of reasonable precautions, is established.” •
The petition in the case before us adequately alleged the neglect of reasonable precautions and is, therefore, sufficient to support a cause of action.
With reference to the issue of assumption of risk, it might be pointed out that this is an affirmative defense which a plaintiff is not required to negate by allegations of the petition. However, obviously aware of appropriate Louisiana jurisprudence, the petition in this case was so skillfully drawn that it anticipated the possibility of defendant’s reliance upon the doctrine of assumption of risk and by its allegations specifically denied the existence of any factual circumstances which would justify the application of this doctrine.
The reference to Louisiana jurisprudence, supra, is made in the light of the holding of our courts in the cases of Jones v. Alexandria Baseball Association, Inc., supra, Lorino v. New Orleans Baseball & Amusement Co., Inc. (Orleans, 1931), 16 La.App. 95, 133 So. 408, and the recent case of Colclough v. Orleans Parish School Board (La.App. 4th Cir., 1964), 166 So.2d 647.
The Lorino and Jones cases are authority only for the conclusion that spectators at baseball games are not entitled to recover for injuries inflicted by baseballs which are erratically batted or thrown. This principle derives from what is sometimes referred to as the “baseball rule”. The application of this rule is based upon the premise that baseball, our national pastime, is played to such an extent and is publicized so broadly through every communication media, as well as being a frequent topic of general discussion, that the conduct of any base *706 ball game and its inherent dangers are presumed to be matters of common knowledge. Distinctions are made, however, with respect to spectators in stands protected by-screens and those in open seats, commonly known as bleachers, and the cases do not apply the rule to injuries which might be caused by defects in the physical plants or by occurrences which are beyond the normal or inherent risks.
There are distinctions made in the jurisprudence of our country between baseball and other sports which we will summarize only for the purpose of illustration.
In ice hockey cases there appear ■ to be two lines of authority, the majority rule being that liability depends upon the particular knowledge of the plaintiff, as opposed to the minority rule, for example in Minnesota, New York and Canada, that the game is played to such extent and its risks are so well known to the general public that the spectator is presumed to assume the risk.
'In wrestling contests the general rule turns on the'actual knowledge of the spectators and the foreseeability of the injury. Spectators sitting in the first few rows near the ring do not assume the risk of injury caused by one of the participants being thrown out of the ring.
In automobile racing the test is the particular knowledge of the spectator and the degree of care used by defendants.
In soapbox derbies most of the cases involve injuries to spectators caused by cars running off of the track, which circumstances would appear to be somewhat analogous to the case before us by injury caused by players running out of the field of play. In these soapbox derby cases exceptions (demurrers) have been dismissed on the ground that the question of actual knowledge establishing assumption of risk is a factual issue; Murphy v. Jarvis Chevrolet Co., 310 Ill.App. 534, 34 N.E.2d 872 (1941); Watford by Johnston v. Evening Star Newspaper Co., 93 U.S.App.D.C. 260, 211 F.2d 31 (1954); 72 A.L.R.2d 1137.
We have been unable to find cases involving injuries sustained by spectators at football games with the sole exception of Colclough v. Orleans Parish School Board, supra, which is strongly relied upon by counsel for defendant. There are certain obvious distinctions between the Colclough case and the case before us on appeal which, in our opinion, serve to conclusively eliminate it from analogy. The injury in the cited case occurred when plaintiff, upon invitation of his son, one of the players, attended a spring practice scrimmage held in an open area of a city park. The spectator' attendance was numbered at about 25 to 30; as stated by the opinion of the court plaintiff was a former college football player who should have known of the likelihood of injury while standing in close proximity to the edge of the playing field; there was no indication that the defendant school board had extended any invitation, either express or implied, which would have encouraged the attendance of spectators. As we have 'observed, these facts would appear to eliminate the cited case from consideration as authority for a similar holding in the cause before us.
The following extracts from the opinion in the Colclough case are particularly pertinent :
“It is knowledge common to all who have watched football games, or viewed such games on television, that ofttimes as a result of momentum generated in executing plays, players cannot avoid running beyond the limits, of the playing field and as a result accidents may occur.”
% ij: ‡ ;|i
“Plaintiff was cognizant of such conditions and knowingly placed himself in a position of danger and assumed the risk of injury, and whatever damages he suffered can be said to be due to his contributory negligence.” (Emphasis supplied)
It is abundantly clear that the allegations of the petition in the instant case were *707 carefully made for the purpose of avoiding the application of the reasoning in the Colclough suit which led to its dismissal upon an exception.
It is our conclusion, on the basis of the reasons above set forth, that the factual allegations of the petition satisfactorily sustain the recognition of plaintiff’s status as that of an invitee and adequately assert acts of negligence on the part of defendant which, if proved, would entitle plaintiff to recovery. Accordingly,
It is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, set aside and reversed. The exception of no cause and no right of action is dismissed and this case is remanded to the Honorable the First Judicial District Court in and for the Parish of Caddo, State of Louisiana, for further proceedings according to law.