BARHAM, Judge.
This is an action ex delicto for damages for personal injuries sustained by a seventy-one year old woman spectator while she was watching a ninth grade football game from the sidelines. Previously this Court has considered this matter on appeal from a judgment sustaining an exception of no cause of action. (Turner v. Caddo Parish School Board, La.App., 179 So.2d 702). After remand to the district court and a trial on the merits, the trial court dismissed plaintiff’s suit, finding “ * * * no negligence on its [the school board] part causing or contributing to the injury to Mrs. Turner.”; “ * * * that Mrs. Turner was contributorily negligent * * * ”; and that “ * * * Mrs. Turner assumed the risk of injury. * * * ”
After trial, but before judgment, Mrs. Turner, the original plaintiff herein, died of causes other than those which could be attributed to the injury. The administrator of her estate has been substituted as party plaintiff and has appealed from the district-court judgment.
Mrs. Turner was the grandmother of a football player on the Midway Junior High School team. She went to the playing field of Lakeshore Junior High School with her daughter and son-in-law, Mr. and Mrs. Dumas, and another grandson. The game was a regularly scheduled contest which was sponsored, conducted and supervised by the defendant, Caddo Parish School Board, through its officers, agents and employees. The athletic program of the Caddo Parish junior high schools was prescribed, organized, supervised and financially supported by the defendant.
A league of six teams had been formed and a regular schedule of games was played. The games were publicized in advance and attendance of the students, their friends and relatives, and the general public was invited and encouraged. The Lakeshore-Midway game was a homecoming event and there were approximately 700 to 1,000 persons in attendance. There were no seating arrangements provided in the form of a stadium, bleachers or other similar physical construction. All spectators were expected to stand, sit on the ground or bring their own seating while in attendance at a game.
*296 The playing field was of regulation size and dimensions and was lined for sidelines, end zone lines and ten yard markers by making visible ground lines several inches wide with marble dust. There was no physical barrier around the playing field to separate it from the spectators. On each side of the playing field, players’ benches were provided for each team at mid-field and were situated approximately 25 to 30 feet from the sidelines. Visible ground markings of marble dust lines extended from each end of the players’ benches, parallel to the boundary line of the playing field, to a point which would approximate an extension of the forty yard lines. From this point these demarcations angled inward toward the end zone of the playing field so that at the goal lines the markings were only 6 to 9 feet from the playing field sidelines.
Two men were assigned to “duty” by the assistant principal of Lakeshore Junior High School. These duty personnel did upon occasion move along the sidelines between the spectators and the field for the purpose of maintaining proper control over the crowd, moving the spectators back from the playing field, maintaining discipline and insuring proper progress of the game.
Mrs. Turner was standing seven or eight feet from the east sideline near the south forty yard line of the playing field in the third or fourth row or rank of spectators. An end sweep was carried out of bounds and two tacklers and the ball carrier collided with Mrs. Turner. She was thrown violently to the ground and suffered severe injuries. .
There should be no misunderstanding as to what this Court held in the previous decision herein. That decision which was rendered in passing upon an exception of no cause of action held that (1) under the allegations of her petition “ * * * plaintiff has adequately established her right to be considered as an implied, if not an express, invitee.” (2) the “ * * * allegations of the petition * * * adequately assert acts of negligence on the part of defendant which, if proved, would entitle plaintiff to recover.” (3) and that plaintiff carefully and adequately pleaded her case so as to avoid the application of the doctrine of assumption of risk.
That decision is not authority for requiring that any specific or enumerated precautions such as ropes, chains or other physical barriers must be provided by the School Board in order to meet “ * * * the necessity for the provision of reasonable precautions, * *
The question presented to this Court is properly stated by the trial court, i.e. “So the real question confronting us at this time is whether or not the defendant on this occasion took the proper precautions under the circumstances; or, putting it another way, was there a breach of duty of reasonable care to Mrs. Turner by the School Board.” We think, however, the conclusion reached by the district court in answer to that question is not supported by the facts.
The uncontradicted proof made upon the trial of this case is that Mrs. Turner took a position two or three yards from the sidelines in the vicinity of the Midway players’ bench so as to be near her grandson who was “suited out” with that team. In close proximity to Mrs. Turner were her daughter, her son-in-law and another grandson. Mrs. Turner had never attended a football game, had a minuteness of knowledge of the game, and her attention was preoccupied with her grandson rather than with the activity on the playing field.
The witnesses who were not employees of the school board do not remember seeing any line of demarcation on the ground such as is previously described herein and which defendant denominates a “restraining line”. Although witnesses testified that the crowd was continually swelling toward and even onto the field and that it required both duty personnel and game officials to move them back, the affirmative and only proof in the record is that Mrs. Turner was never moved *297 or requested to move from the spot where she stood. She heard no warning of peril or danger but she did hear and see the defendant’s employees move others back from the playing field.
It is noted that although defendant’s brief argues that Mrs. Akins testified that Mrs. Turner’s son-in-law admitted to her that he had asked Mrs. Turner to move back, the record does not support that argument for her testimony is simply “ * * * and then he began to tell me that it was her first ball game, that they had taken her, and he told me that he told her to move back when he realized they were coming toward the crowd, and that he moved back.” This is the totality of her testimony and can only refer to the specific incident or play which caused Mrs. Turner’s injuries and it does not contradict the other testimony.
The principal concern of all of the school personnel was that the spectators not interfere with the football game in any way. Lyman E. Gregory, Parish Supervisor of the athletic program, stated he did not know whether he had ever thought about “ * * * whether they [the spectators] knew enough to stay off the football field.” He further testified that the school’s concern was to keep spectators controlled so that the game could be properly conducted.
All of the school’s employees testified that people did not observe the so-called “restraining line” and did not remain behind it. The testimony of both Mr. Langdon and Mr. Dickson, who were on duty at the ball game, is that their primary obligation was to observe and act so as to assure that game progress was not interfered with by the spectators; that students maintained proper discipline; and that spectators did not become involved in the game. When Mrs. Turner received her injury, Mr. Langdon, Mr. Dickson and the principal of Lakeshore Junior High School, Mr. Layton, the only school employees charged specifically with spectator control, were several yards beyond the end zone on the south end of the field, not involved or engaged in any way in spectator control. From their testimony it is obvious that the spectators were in front of the artificial retaining mark at the time of the accident and had been in front of it often and continually during the ball game.
The testimony of Mr. Poole, the assistant principal who assigned Dickson and Lang-don to their duty, is permeated with his attitude that the overriding and primary obligation of the duty personnel was to supervise and control the behavior of students and other spectators. He further testified that only the physical presence of the duty people could effectively restrain the spectators at any artificially marked line. Mr. Sidaris, one of the game officials, testified that he warned the crowd that they were in danger of receiving injury. However, the tenor and import of his testimony is that any concern which the officials exhibited with regard to the spectators was only in relation to the protection of the football players and the progress of the game. This Court is not convinced that his words to the spectators were warning of danger to them. Even so, there is absence of proof or even an inference that Mrs. Turner heard the specific warning.
Exhibit P-21 and Exhibit D-l depict the angling, erratic marble dust line which was supposed to be the demarcation line for spectators. It is obvious that the distance required for the “protection” of the public or spectators by the “restraining line” at the goal line is almost the exact distance Mrs. Turner was removed from the field when injured. There is no evidence otherwise, and perhaps the Court can take judicial notice, that a person 6 to 9 feet from the sideline at the goal line is no safer from injury than one who is 6 to 9 feet from the sideline at the forty yard line.
Considering the aggregate of the consistent testimony of the school employees and the exhibits, it is obvious that the so-called “restraining line” was designed primarily as an indication to spectators that such an angling alignment would afford them better observation of the game, and, further, *298 would assure vision of the field by the players seated on the benches at mid-field. There were no warning signs or other devices which would indicate to spectators the meaning and purpose of the line. It is obvious that the line did not warn or-restrain the spectators. Unless we accept Mr. Si-daris’ testimony, no verbal warning of danger was given to the spectators. The aura and pervasive influence of the testimony is that the safety of the spectators was at least a second thought, if not wholly an afterthought of defendant’s employees.
We do not spell out the care required of the School Board. We do find, however, that in the instant case defendant has failed to meet “the provision of reasonable precautions” for the safety of Mrs. Turner by failing to provide any reasonable warning of danger or protection therefrom. We find in the instant case that adequate safeguards were not provided, and, additionally, that there was active negligence on the part of the personnel of the defendant who had complete observation of a condition of danger and peril which not only should have been, but according to their own testimony, was apparent and obvious to them. These employees stood silently by and did not act to avoid an injury resulting from that known and obvious peril.
The record fails to support the application of the affirmative defenses of assumption of risk and contributory negligence. There is positive evidence that Mrs. Turner did not recognize her peril and the record is diffused with evidence that knowledge of peril could not be imputed to her or to many others who were in attendance at the ball game. There is no affirmative evidence that the demarcation on the ground had any significance as a warning of danger or as a “restraining line” to anyone other than defendant’s employees.
The burden of proof is not upon plaintiff to prove absence of contributory negligence or assumption of risk. These are affirmative defenses and defendant has ■ not discharged or satisfied its burden of proof. Defendant has failed to prove that:
“Plaintiff was cognizant of such conditions and knowingly placed himself in a position of danger and assumed the risk of injury, and whatever damages he suffered can be said to be due to his contributory negligence.” Colclough v. Orleans Parish School Board, La.App., 166 So.2d 647 (4th Cir., 1964) (Emphasis supplied)
The court found in the Colclough case that plaintiff knowingly assumed the risk, and as our previous opinion noted, the instant case and the Colclough case are not analogous.
Appellee relies heavily upon the case of Perry v. Seattle School District #1, 66 Wash.2d 800, 405 P.2d 589, and we agree that the facts of the two cases are strikingly similar. The majority opinion therein is rendered under the particular law governing appellate review in that state which provides that facts upon appeal may be reversed only when reasonable minds cannot conclude otherwise. Throughout this opinion the majority employs such language as “* * * It] he trier of the facts might well have inferred * * * ” and “ * * * reasonable minds might conclude * * Under the guidelines for appellate review in the State of Washington, the dissent in the Perry case must have concluded that no reasonable rmnd could find absence of negligence on the part of the School Board under that set of facts. The decision is by a 5-4 divided court and is rendered under narrow restrictions imposed upon appellate review of facts. .This court is not governed by similar confining restrictions and limitations in its review of factual issues and our persuasion is that the minority view is correct.
Our finding herein is simply that the district court was in error in concluding that defendant was not negligent and that Mrs.. Turner was contributorily negligent or had assumed the risk.
*299 The defendant had filed a third party action against Mr. and Mrs. Harold J. Dumas, but defendant has not appealed and that claim is, therefore, not before the Court.
Having considered and determined liability, it is necessary that we give consideration to the quantum of an award for the injuries suffered by the plaintiff. She received comminuted fractures of the tibia of both legs near the knee joints which extended into the joints. It is disputed by defendant that Mrs. Turner received an injury to the back. However, we find that the compression fractures of T-6 and T-9 vertebrae were a direct result of the accident on October 17, 1963.
Only the leg fractures and general attendant injuries were diagnosed in October, 1963. Both legs were then encased in long leg casts which extended from the toes to well above the knees. Mrs. Turner was immobilized by reason of the casts.and was ordered to bed. She remained in the hospital for one month and the casts were not removed until two months after the accident. Although Mrs. Turner continually complained of back pain and discomfort, the diagnosis of the fractures of the vertebrae, and severe osteoporosis, was not made until August 4, 1964. The medical testimony is that the osteoporosis was aggravated and its rate of progress was increased by the period of immobilization.
We have in this case a seventy-one year old woman who suffered serious injury which necessitated hospitalization for one month in 1963 and approximately two weeks in 1964. She was totally immobilized for more than two months. She suffered pain and discomfort until her death on February 26, 1967, which was 31/3 years after the injury. The medical expense attendant upon these injuries amounted to $1,375.05. Accordingly, we make an award in favor of plaintiff of $18,500.00.
The judgment of the district court is reversed and set aside, and,
It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, James M. Turner, as Administrator of the Succession of Ruth Parker Turner, and against the defendant, Caddo Parish School Board, for the full sum and amount of Eighteen Thousand Five Hundred and No/100 ($18,500.00) Dollars.
Appellee is cast for all costs legally assessable against it.