WILSON, J.
This is an action seeking to recover damages for personal injuries sustained by the plaintiff Vincie Tipton at the Mohegan Sun Casino which is under the control of the defendant Mohegan Tribal Gaming Authority, Uncasville, Connecticut.
This court has jurisdiction pursuant to the Constitution of the Mohegan Tribe of Indians of Connecticut, Art. XIII, Sec. 2; Mohegan Tribal Ordinance (hereafter M.T.O.) No. 95-4 of the Mohegan Tribe of Indians of Connecticut, “An Ordinance Establishing the Gaming Disputes Court”; and M.T.O. No. 98-1, “An Ordinance Amending Ordinance 96-2 Establishing the Mohegan Torts Code.”
The sovereign immunity of the Mohegan Tribe is found to be waived to the limited extent set forth therein by M.T.O. 98-1, Sec. 3.
The governing law applicable to this decision is the relevant Connecticut law; Constitution Art. XIII, Sec. 1; and the law as set forth in Mohegan Tribal Ordinances; the Connecticut General Statutes; and the Common Law of the State of Connecticut; M.T.O. 95-4, Art. III.
The court has jurisdiction over the parties pursuant to M.T.O. No. 95-4, Art- IV.
The court finds that proper notice of the commencement of this action was given pursuant to M.T.O. No. 98-1, Sec. 9, and that the claim was timely presented in accordance with Secs. 10 and 11 of M.T.O. No. 98-1.
The plaintiff was a 58 year old first time patron at the Mohegan Sun Casino in the early morning hours on March 11, 1997. She arrived at the casino at about 2:00 A.M. in an automobile accompanied by her husband and two sons, one of whom was driving. They entered by way of the Spring Entrance and used the valet parking service provided for patrons on the north side of the entrance. She stayed several hours playing some slot machines and drinking coffee. She denied drinking any alcoholic beverages. At about 5:00 A.M. she departed from the casino with her husband and sons. One of her sons furnished the valet parking ticket to an attendant who retrieved the car, driving it to the exit lane on the south side of the Spring Entrance. She walked toward the car and was caused to trip and fall off the curb, falling into the car, where her head hit the car and she landed on her knees. She sustained the injuries later described.
When the plaintiff s car had previously entered the Spring Entrance, it pulled into the entrance lane where there was no elevated curb; that is, the sidewalk at that point was flush with the pavement. At the *410 place where she exited, however, there was a curb so that the walk was elevated several inches above the pavement of the exit lane. It was dark at the time. There are overhead lights and a canopy covering part of the Spring Entrance. The weather was dear and dry and the surfaces were not slippery.
The court in this case viewed the location of the fall by agreement of, and in the presence of, counsel for both parties in order to obtain a clearer understanding of the issues and to apply the evidence properly. See Dickson v. Yale University, 141 Conn. 250, 256,105 A.2d 463 (1954).[1]
The court finds that when the plaintiff entered the Spring Entrance she walked on a level surface from the roadway onto the sidewalk. When she exited on the opposite side of the driveway there was an elevated curb which she was not expecting. The overhead lights were some distance away and there was no light directly over the curb where the plaintiff fell; that is, the light overhead would have shown at an angle.
The plaintiff was a business invitee. Bunnell v. Waterbary Hospital, 103 Conn. 520, 524-525, 131 A. 501 (1925). As such, the defendant owed her the duty of exercising reasonable care to have its premises safely constructed and maintained and to guard against subjecting her to dangers of which it was cognizant or which it might reasonably have anticipated. Guilford v. Yale University, 128 Conn. 449, 454, 23 A.2d 917 (1942).
The failure to provide and maintain proper illumination where there are steps is negligent, Dickau v. Rafala, 141 Conn. 121, 104 A.2d 214 (1954), and it is so found. This is particularly so in this case where there was no step when the plaintiff entered, but there was one when she exited.
It is also found that the defendant’s negligence in not providing adequate lighting, and in allowing her to exit in an area where there was an unexpected step, was the proximate cause of the plaintiffs fall and injuries. Ibid..
The court finds that the foregoing condition was a “dangerous condition” within the meaning of M.T.O. 98-1, Sec. 2(b) and Sec. 3(e)(2), and that the plaintiffs injuries were proximately caused by such condition.
One of the special defenses in this case was that the plaintiff had ingested medications or other substances which she knew or should have known would affect her judgment and perception. The court finds that the plaintiff did not ingest alcoholic beverages. Although she was taking prescription medications, the court finds that these did not affect her perception or judgment.
 Another special defense is that the plaintiff was comparatively negligent in causing her own fall. Her course of conduct must be judged as the circumstances would then appear to a reasonable person. As the Connecticut court said in a similar case, “a partial step, the foot upon the sill as the door is opened, the balance lost, even a little, and the fall is inevitable.” Bunnell v. Waterbury Hospital 103 Conn. 520, 525-526, 131 A. 501 (1925). The test of the conduct of the plaintiff is that of an ordinary person under the same circumstances. Id. at 526, 131 A. 501. This is *411 resolved in the plaintiffs favor: it is found that she was not comparatively negligent.
As noted, when the plaintiff fell she hit her head on the car and landed on her knees. She felt as though her knees were “on fire.” Photographs in evidence depiet-ed the bruises on her knees. She also injured her shoulder, her right side, and |J: : right hip. She felt as though she was in a 1 I state of shock. One or more paramedics and other emergency personnel arrived on 1⅛ the scene and properly attended to the jplaintiff. She was transported to the * W.W. Backus Hospital by the Mohegan Tribal Fire Department ambulance. Their record reflects injury to the right shoulder and both knees and complaints of pain in the face, neck, right shoulder and both .'knees.
The Backus Hospital treated the plaintiff for contusion and abrasion of knees and fecial contusion. Tylenol was prescribed.
She subsequently treated with Kathryn Papadakis, M.D. and Robert P. Dudek, M.D. and underwent a course of physical therapy for approximately two months when she was discharged. She still experiences occasional pain in the hip and knees.
The plaintiffs medical bills were
W.W. Backus Hospital 593.34
Dr. Papadakis 174.00
Dr. Dudek 584.00
Physical Therapy 1,061.00
Total $2,412.34
It is found that such charges were reasonable and constitute the plaintiffs actual damages. Such amount is awarded to the plaintiff in actual damages subject to a reduction by an amount equal to the total amounts determined to have been paid as collateral sources under Conn.Gen.Stat. Secs. 52-225a and 52-225b.
It is also found that the plaintiff is entitled to non-economic damages for pain and suffering and mental anguish in the amount of $1,206.17.
The court awards the plaintiff $3,618.51 subject to reduction for collateral source payments.
Judgment may enter accordingly.

. It is noted that following the plaintiffs fall the defendant constructed a stone wall on top of the curb along the area where the plaintiff fell. The stated purpose of constructing this was to keep pedestrians from walking into the driveway. A wooden fence was also put in at a later date.