MEMORANDUM OF DECISION
EAGAN, J.
INTRODUCTION
The plaintiff, Reginald Crenshaw, alleges that he sustained personal injuries and property damage as the result of a one-car accident in March 2007 on the level two exit of the Riverview Garage at the Mohegan Sun Casino. There is no dispute that the accident occurred when the plaintiffs 2007 Buick Lucerne CXL (Buick Lucerne) slid on black ice on the exit ramp into a light pole. Plaintiffs Amended Complaint seeks relief from three defendants, the Mohegan Tribal Gaming Authority (MTGA); the General Motors Corporation; and Tony March Buick Company (Tony March).
Plaintiffs claim against the MTGA is that it breached the duty of care owed to patrons of the Casino parking garages by allowing the icy conditions to form and to go untreated. Plaintiff seeks $111,110.95 in damages from the MTGA.
In addition to icy conditions, plaintiff also claims the accident was caused by the failure of the defendant lessor, Tony March, to remedy problems with the low7 tire indicator gauge traction control system and stable track system in the Buick Lucerne that rendered the car defective and unreasonably dangerous to drive. Plaintiff seeks $54,000.00 in damages from Tony March as a result of the accident.
Plaintiffs claims against the defendant General Motors were automatically stayed pursuant to Section 362 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., following General Motors’ filing a voluntary petition seeking bankruptcy protection.
On August 13, 2009, a one day trial wras held as to the plaintiffs claims against the MTGA and Tony March.
FINDINGS OF FACT
1. On March 1 and March 2, 2007, the plaintiff and a friend were patrons of the Mohegan Sun Casino.
2. Some time after 11:00 p.m. on March 2, 2007, the plaintiff retrieved from valet parking his 2007 Buick Lucerne leased from the defendant Tony March Buick.
*166 3. Accompanied by his friend and driving at approximately five to ten miles per hour, plaintiff proceeded to the east exit ramp, level two, of the Riverview Garage. As he ascended the exit ramp, he lost control of the car, and hit an overhead light pole. Plaintiff was wearing his seat belt. No airbag was deployed.
4. When the accident occurred, the ramp was covered with black ice which caused the plaintiff to lose control of the car as he traveled up grade and to slide into the overhead light pole. At the place of the accident, the exit ramp curved with an uphill protectory.
5. The Mohegan Sun Casino’s accident report indicated that the accident occurred at 11:27 (23:27) on March 2, 2007 and that the plaintiff, as well as his passenger, were both reported to have sustained injuries in the crash, with the plaintiff complaining of pain on the right side rib area. Both were initially treated by the Mohegan Tribal Fire Department.
6. The plaintiff was strapped to a gurney, placed in a neck brace, and transported by the Mohegan Fire Department ambulance to the Backus Memorial Hospital, which discharged him approximately two hours after his arrival.
7. The Backus Hospital’s report shows that plaintiff suffered injuries to his head, neck, right leg and left arm and that he was suffering from headaches and neck pain as well as trouble breathing and chest pain. The hospital report further states that there was no evidence of head trauma and muscle spasms of the neck. X-rays taken were negative for traumatic injury.
8. On March 3, 2007, the day after the accident, the plaintiff left work, which required heavy lifting, and visited Hartford Hospital because he was experiencing back pain.
9. Plaintiff also sought treatment at St. Francis Hospital for neck and back pain and was primarily prescribed physical therapy. A St. Francis Hospital report of January 2, 2009 indicates no evidence of acute traumatic injury.
10. Additionally, on November 24, 26 and December 1, 2008, the plaintiff visited Dr. William McEvoy for chiropractic services. Dr. McEvoy treated the plaintiff with spinal adjustment to restore joint bio-mechanics, physical therapy, and a rehabilitative exercise program.
11. Plaintiff claims he still experiences back spasms and neck spasms that come and go which have prevented him from working for more than two years.
12. There is no evidence of any degree of permanency of injury to the neck or back or that plaintiff was unable to return to work after his December 1, 2008 visit to Dr. McEvoy.
13. There is no evidence that plaintiff was driving in a negligent manner at the time of the accident.
14. When Mohegan Officer Kenneth Smith arrived at the scene to investigate plaintiffs accident the exit ramp was coated with black ice at the time of the accident (23:27) 11:27 p.m. and at (23:30) 11:30 p.m. Officer Smith immediately notified the Mohegan grounds people to salt the icy roadway and the Engineering Department to check the stability of the light pole. There was minor damage to both plaintiffs vehicle and the light pole.
15. The temperature in the area, according to the National Weather Service record for March 2, 2007, showed there was 4.02 inches of precipitation in the region and that temperatures had dropped below freezing by 10:17 p.m. Temperatures were below 34 degrees since 9:16 p.m. The weather reports preceding and includ *167 ing the date of the accident predicted cold, wet weather conditions.
16. The exit ramp at the time of the accident was coated with black ice. This ramp was known to the defendant and its employees as being prone to slippery conditions when the weather became cold and was very heavily traveled. In the past, there had been at least five prior accidents at the same location where plaintiffs accident took place.
17. The defendant MTGA had no policies in place regarding the inspection of the premises for ice and snow on the night in question and only two employees were patrolling the entire grounds of the Sun Casino with the primary responsibility of collecting rubbish and a secondary responsibility of sanding where they deemed appropriate.
18. The Connecticut State Police at the time of the accident had reported frequent ice related accidents on the highway.
19. There was no expert testimony or other credible evidence that the accident was caused by problems with the low tire indicator gauge, traction control system or stable track system in the Buick Lucerne.
20. Plaintiff brought his Buick Lucerne to Tony March on various dates for services wholly unrelated to the defects he alleges caused the car to slide into the telephone pole on the night of the accident.
21. There is no evidence that the reasons plaintiff sought servicing of the Buick Lucerne from Tony March caused or contributed to the accident.
22. There was damage to the plaintiffs Buick Lucerne, but there was no proof of the extent of the damage or the repair cost. Tony March subsequently repossessed the vehicle.
23. Plaintiff suffered injuries to his neck and back as a result of the accident on March 2, 2007 and was unable to return to his line of work, which required heavy lifting, as well as physical exertion until December 2, 2008. There is no credible evidence that plaintiff was unable to return to work after that date.
24. Plaintiffs average weekly wage was $208.00 from his work at CCS Labs at the time of the accident.
25. Plaintiffs lost wages for the 91 weeks from the date of the accident to December 1, 2008, were $18,928.00
26. Plaintiffs medical bills totaled $8,265.92, which are subject to various insurance coverages.
CONCLUSIONS OF LAW
1. The defendant MTGA owed a duty to the plaintiff, as a business invitee, to maintain the Casino premises, including the Garage, in a reasonably safe condition, and to inspect the premises.
2. The defendant MTGA owed a duty to Casino patrons to monitor weather forecasts and to act accordingly.
3. The defendant MTGA failed to exercise due diligence to prevent the formation of ice on the ramp of the Garage and to remove ice already formed where plaintiffs accident occurred.
4. The defendant had actual notice of 5 prior accidents on the exit where plaintiff slid on black ice and constructive notice that the prevailing weather conditions would almost inevitably cause freezing of any precipitation on the ramp.
5. Pursuant to the Mohegan Tribal Code, Art. IV, § 3-251 (a)(3), plaintiff shall recover for his actual damages and non-economic damages at 200 percent of his actual damages prior to any reduction for collateral source payments.
6. Plaintiff has failed to prove by the preponderance of evidence that actions by *168 the defendant Tony March caused or contributed to the accident on March 2, 2007.
DISCUSSION
A. The MTGA
1. Liability
The parties agree that in a negligence action based on a defective condition, defendants cannot be held liable “unless they knew of the defective condition or were chargeable with notice of it ...” Cruz v. Drezek, 175 Conn. 230, 235, 397 A.2d 1335 (1978)
Here there is no evidence that the MTGA had actual notice of the icy condition on the exit ramp on the night of the accident. With regard to the issue of constructive notice, the gravamen of the MTGA’s defense is that because black ice forms instantaneously, it could not, “in the exercise of reasonable care, have discovered it in time to remedy it”. Id, at 238-39, 397 A.2d 1335. If the MTGA’s reasoning is correct, then the MTGA can never be liable for accidents involving black ice on the Casino premises unless the defendant had actual notice of the icy condition followed by a sufficient interval of time to allow for remedial action.
The MTGA’s reasoning is faulty. The issue is not merely whether a defendant knew of the existence of black ice and for how long a period of time before the accident. Rather, the issue also is whether a defendant should have known in the exercise of reasonable care that all the elements essential to the creation of a dangerous condition existed and to what extent the defendant then acted to protect business invitees from potential harm. As stated in Tipton v. Mohegan Tribal Gaming Authority, 1 G.D.R. 22, 1 Am. Tribal Law 408 (1998), the exercise of reasonable care also requires the MTGA “to guard against subjecting her [plaintiff] to dangers of which it was cognizant or which it might reasonably have anticipated”, citing Guilford v. Yale University, 128 Conn. 449, 454, 23 A.2d 917 (1942).
Here, the defendant expressly acknowledges “... the MTGA was aware of the potential for icing conditions.” Id., p. 5. The defendant likewise knew that there had been, on other occasions, at least 5 accidents at the location where plaintiff skidded into the pole. Yet in spite of this knowledge, the defendant had only two employees available to salt and sand the entire Casino grounds, and this activity was secondary to their primary responsibility of collecting trash. Based on the totality of the circumstances, including the weather forecast for the prior day, the defendant failed to exercise reasonable care to prevent the formation of ice or to be on the lookout to treat black ice already formed.
The MTGA also argues that the plaintiff failed to take reasonable measures to avoid the accident in that he merely tapped the brakes, putting his foot on the brakes for a couple of seconds. The MTGA opines that: “In an almost new car equipped with anti-skid brakes, the correct procedure is to apply the brakes and keep them applied ...” MTGA Post Trial brief, p. 7. Yet, the MTGA offered no evidence to support its view of how the plaintiff should have braked to avoid skidding and there is no evidence at all that the plaintiff was contributorily negligent.
2. Damages
The MTGA does not dispute that, as a result of the accident on March 2, 2007, the plaintiff suffered some injuries, but disputes the severity of the injuries that the plaintiff claims. However, the MTGA submitted no evidence supporting its position.
*169 The record shows that plaintiff sustained injuries to his neck and back for which he sought treatment from various hospitals/doctors, up to and including December 1, 2008, There is no evidence of any degree of permanency of injury to the neck or back nor credible evidence that plaintiff was unable to return to work after his last visit to Dr. McEvoy on December 1, 2008.
Plaintiffs medical bills were $8,265.92, which are subject to various insurance coverages and, therefore, also subject to a collateral source deduction. The Court will leave it for the parties to agree on the extent to which the collateral source deduction applies to all or only a portion of plaintiffs medical bills, as well as the special damages to which plaintiff is entitled, based on his lost wages and medicals as set forth in the Findings of Fact, supra. If the parties cannot agree, this Court will entertain a motion to resolve this matter.
B. Tony March Buick
Plaintiff has failed to establish by the preponderance of the evidence that the defendant Tony March was negligent in failing to remedy problems with the Buick Lucerne’s low tire pressure indicator, traction control system and the stable track system, or violated any warranties (At trial, plaintiff withdrew Count Three of his Amended Complaint against Tony March.).
Instead, the evidence shows that plaintiff took the Buick Lucerne into Tony March for services unrelated to the defects that he claims contributed to the accident. Further, there is no evidence that the reasons for which plaintiff brought the Buick Lucerne in for servicing could have contributed in any way to the subject accident.
CONCLUSION
Judgment shall enter for the defendant Tony March.
Judgment shall enter for the plaintiff against the defendant MTGA, for actual damages and for pain and suffering in an amount on which the parties shall seek to agree. If they cannot do so within 30 days from the date of this decision, they shall file a Motion with this Court which will then establish the amount to be awarded to plaintiff in actual damages and for pain and suffering.
So ordered.